1                **UNITED STATES DISTRICT COURT**
                  **MIDDLE DISTRICT OF FLORIDA**
2                      **TAMPA DIVISION**

3

4

5    LUIS A. GARCIA SAZ,
     MARIA DEL ROCIO BURGOS GARCIA,
6
                         Plaintiffs,
7
          vs.              CASE NO.8:13-cv-220-T-27TBM
8                          September 5, 2013
                           Tampa, Florida
9                          2:00 p.m. - 3:00 p.m.

10   CHURCH OF SCIENTOLOGY RELIGIOUS TRUST,
     et al.,
11
                         Defendants.
12   _____/

13

14

15
                    TRANSCRIPT OF MOTION HEARING
16                      (Document No.70)
          BEFORE THE HONORABLE THOMAS B. MCCOUN, III
17              UNITED STATES MAGISTRATE JUDGE

18

19

20

21
     Proceedings digitally recorded and transcribed by
22   Official Court Reporter using computer-aided
     transcription.

23

24

25

```
 1    A P P E A R A N C E S:

 2    Theodore Babbitt, Esquire
      Babbitt, Johnson, Osborne & Leclainche, PA
 3    1641 Worthington Rd, Suite 100
      West Palm Beach, FL 33409
 4    561/684-2500
      On Behalf of the Plaintiff.
 5
      Amanda Marie McGovern, Esquire
 6    Weil, Quaranta, McGovern, P.A.
      200 S. Biscayne Blvd., Suite 900
 7    Miami, FL 33131
      305/372-5352
 8    On Behalf of the Plaintiff.

 9    F. Wallace Pope , Jr., Esquire
      Johnson, Pope, Bokor, Ruppel & Burns, LLP
10    911 Chestnut St
      Clearwater, FL 33757
11    727/461-1818
      On behalf of the Defendants
12
      Robert Vernon Potter, Esquire
13    Johnson, Pope, Bokor, Ruppel & Burns, LLP
      911 Chestnut St
14    Clearwater, FL 33757
      727/461-1818
15    On behalf of the Defendants

16    Nathan Michael Berman, Esquire
      Zuckerman Spaeder, LLP
17    101 E Kennedy Blvd, Suite 1200
      Tampa, FL 33602
18    813/221-1010
      On behalf of the Defendants
19
      Marie Tomassi, Esquire
20    Trenam Kemker
      200 Central Ave, Suite 1600
21    St Petersburg, FL 33701
      727/820-3952
22    On behalf of the Defendants

23    Also Present:  Richard Zabak, Esquire

24

25
```



**I N D E X**

CERTIFICATE OF COURT REPORTER                                    46

* * * * * * * * * *

**E X H I B I T S**

*(NONE RECEIVED IN EVIDENCE)*

* * * * * * * * * * *

**P R O C E E D I N G S**

1

2          (Court called to order.)

3          THE COURT:  Let's call the case, please.

4          THE DEPUTY CLERK:  The matter of Luis Garcia Saz

5   vs. Church of Scientology Religious Trust, case number

6   8:13-cv-220-T-27TBM.

7          THE COURT:  Okay.  Again, we're recording the

8   proceedings electronically, feeds off the microphone there

9   in front of you.  If you wish to remain seated and just

10  speak into the mic, that's fine.  If you want to come to the

11  podium, you can do that as well.

12          Let's go ahead and get everybody to state their

13  appearance.

14          MR. JOHNSON:  Bob Johnson, here -- although I'm

15  not a attorney of record in the case, I was subpoenaed in

16  the case.

17          THE COURT:  Okay.

18          MR. ZABAK:  Your Honor, Richard Zabak with

19  GrayRobinson, and I'm also here in my capacity not as an

20  attorney of record but as a subpoenaed individual.

21          THE COURT:  All right.  Counsel?

22          MR. POTTER:  Robert Potter here on behalf of the

23  Church of Scientology Flag Service Organization and Church

24  of Scientology Flag Ship Service Organization, and I believe

25  that Mr. Pope is on the phone.  And I'm not sure -- yeah --

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
 1            THE COURT:  Thank you.

 2            MR. POPE:  I am on the phone, thank you.

 3            THE COURT:  Mr. Pope, we also have Amanda McGovern

 4   and Ted Babbitt; is that correct?

 5            MR. BABBITT:  That's correct, Your Honor.

 6            MS. MCGOVERN:  That's correct, Your Honor.

 7            MS. TOMASSI:  I'm Marie Tomassi from the Trenam

 8   Kemker law firm, and I'm here for IAS Administrations and

 9   U.S. IAS Trust.

10            THE COURT:  All right.

11            MR. BERMAN:  And Nate Berman from Zuckerman

12   Spaeder here on behalf of Church of Scientology Religious

13   Trust.

14            THE COURT:  All right.  Anybody else on the phone

15   that I missed?

16            (No audible response.)

17            THE COURT:  Got a hearing scheduled today on the

18   dispute with regards to certain discovery initiated by the

19   defendants.  Initially plaintiffs filed a Motion for

20   Protective Order regarding the numerous requests for

21   production, then we've got a response and another

22   memorandum.  Who wants to begin addressing this for the

23   plaintiffs?

24            MR. BABBITT:  That would be -- I think that would

25   be me, Your Honor.
```

1          MR. JOHNSON:  And, Judge, if I might.  Bob

2   Johnson.  I have a scheduling issue.  I didn't -- this

3   didn't get on my calendar.  I have a flight at 3:50 today.

4   So I will be here until 2:30.  My wife is anxiously waiting

5   for me downstairs.

6          THE COURT:  Who subpoenaed you?

7          MR. JOHNSON:  I was subpoenaed by, I believe, all

8   of the entities.

9          Bob, is that correct, or was it just FSO?

10          MR. POTTER:  Well, I don't believe that you were

11   subpoenaed for this hearing.  You were subpoenaed for the

12   evidentiary hearing on the Motion to Disqualify.

13          MR. JOHNSON:  Correct.  However, I was subpoenaed

14   to produce documents at a certain date, which I then filed

15   -- I then served on Mr. Potter a response to that.  And,

16   Judge, what I have done today is I brought in a privilege

17   log, if I might approach and provide the Court with a copy

18   of the privilege log.  And I have brought with me all of the

19   documents in this envelope, delivered to the Court, should

20   the Court decide to review those documents in camera.

21          THE COURT:  Okay.

22          MR. JOHNSON:  But as far as making any argument is

23   concerned, I don't have any argument to make.  I will rely

24   on Mr. Babbitt, and I am just here to tend to the documents.

25          THE COURT:  Okay.  Well, you're welcome to stay,

1   you're welcome to leave.  It's your choice.

2           Now who spoke up to make argument?  Is that Mr.

3   Babbitt?

4           MR. BABBITT:  That's correct, Your Honor.

5           THE COURT:  Why don't we begin and see where we go

6   on this.  And let me just ask at the outset, Ms. McGovern

7   has filed a pleading which she styles a Report of the

8   Parties Meet and Confer, basically outlines six areas that

9   she says have been addressed and which apparently assume all

10  of the disputes.  Is that correct?  Can we work from this

11  document as sort of a guide to our discussion?

12          MR. BABBITT:  That was my plan, Your Honor.  I

13  would just ask, do you want me to take one at a time or do

14  you want me to just make an argument as to all five that are

15  left?

16          THE COURT:  Well, hold on one second.

17          MR. POTTER:  Yes, Your Honor.  I worked with Miss

18  McGovern in filing that document with you.  That is our

19  effort to try to identify the issues to be addressed today.

20          THE COURT:  Okay.  All right.  Mr. Babbitt, begin

21  any way you wish.  I will likely interrupt and ask questions

22  to serve my needs.  But in any way, begin whichever way you

23  wish.

24          MR. BABBITT:  Sure.  The first item requests are

25  essentially the party to represent the clients.  It relates

1   to Mr. Johnson's party.  We have stipulated that he is in

2   fact hired as an attorney by the plaintiffs.  We object to

3   and don't understand the relevance of the contents of our

4   fee agreement, which is the only offer of relevance

5   (indiscernible) to recuse him and they need to prove that

6   he's hired.  So we've agreed to that, and I think that meets

7   the issue.  The defendants disagree with that.

8          THE COURT:  Do you claim any sort of -- do you

9   claim any sort of privilege in relation to any retainer

10  agreement or fee agreement?

11         MR. BABBITT:  Yes, Your Honor.  I think that the

12  relationship with our clients and what we have denied to do

13  and the contents of what we intend to do for our clients is

14  not only irrelevant, but it is privileged.  It is

15  attorney-client.

16         THE COURT:  Now, there is -- I'm looking at the

17  Document 60 (indiscernible), which is this report, and

18  basically what plaintiffs stipulate is that there is a

19  retainer agreement among GrayRobinson, Babbitt Johnson, and

20  Weil Quaranta and the plaintiffs.

21         MR. BABBITT:  That's right.

22         THE COURT:  And then additionally there is a fee

23  agreement among GrayRobinson, Babbitt Johnson and Weil

24  Quaranta.

25         MR. BABBITT:  I'm not even sure that is asked for,

```
 1   Your Honor, the second document.  But certainly how we're

 2   going to split the fee has no relevance to this case.  The

 3   only possible evidence that I see is that Mr. Johnson is, in

 4   fact, employed.

 5            THE COURT:  The reference to GrayRobinson, is that

 6   your reference to Mr. Johnson?

 7            MR. BABBITT:  That's right.  He is employed by

 8   GrayRobinson.

 9            THE COURT:  And so are you suggesting there that

10   there is an agreement with Mr. Johnson, or is there an

11   agreement broadly with GrayRobinson?

12            MR. BABBITT:  There's an agreement with

13   GrayRobinson, and Mr. Johnson signed that agreement on

14   behalf of that parent corporation.

15            THE COURT:  Okay.  So essentially what you --

16   you're suggesting that the stipulation that such retainer

17   agreement exists and that such a fee agreement exists is all

18   they need to know for purposes of the upcoming hearing; is

19   that it?

20            MR. BABBITT:  That's correct, Your Honor.  Other

21   than that it's intrusive, it's unnecessary, and it's

22   attorney-client as to our relationship with our client.

23   It's an agreement between us and our client.  And there is

24   no possible reason I can see that they would do that.

25            THE COURT:  Okay.  Do you want to weigh in on that
```

1    one?

2          MR. POTTER:  Yes, Your Honor.  The agreements are

3    -- the fact that the agreements themselves exist is both

4    relevant and highly so.  Once the agreements themselves are

5    relevant, then there is no privilege that prevents their

6    full disclosure.

7          We have already made a substantial showing in our

8    motion for disqualification, and that's what all this

9    discovery goes to.  Obviously we have filed that motion, it

10   is supported by numerous affidavits which talk about Mr.

11   Johnson's involvement in the defendants' past litigation

12   history, their litigation tactics, their litigation

13   strategies, the so-called litigation play book information.

14         The fact that Mr. Johnson has now signed both an

15   agreement with the plaintiffs to represent them and also an

16   agreement with the plaintiffs' counsel of record to assist

17   them in this litigation obviously raises the question of

18   what is his role, what is he doing, is he going to

19   communicate this play book of litigation information to the

20   plaintiffs and their counsel.

21         THE COURT:  Let me ask Mr. Johnson, have you

22   entered a Notice of Appearance?

23         MR. JOHNSON:  No, Your Honor.

24         THE COURT:  Okay.

25         MR. POTTER:  So the fact that these agreements

1  exist are themselves proof of their relevance.  Now there is

2  no privilege that prevents their disclosure.  I assume that

3  the fee agreement between the three law firms is probably a

4  fee splitting agreement.  And certainly how the fees are

5  being split is going to be somewhat indicative of what Mr.

6  Robert Johnson's role in this litigation is.  And that's

7  really the whole crux of this matter.

8          Mr. Johnson himself has confidential information.

9  There is no question about it.  He was the defendants'

10 attorney for 16 years.  He's handled 32 other cases that are

11 virtually identical to the issues and claims raised in this

12 case.  The information that we have already provided in our

13 Motion to Disqualify shows, in fact, that he appears to be

14 trading on that information, that past history, and anything

15 that goes to show that he is providing information to the

16 plaintiffs and their counsel is very, very much relevant to

17 the issues in this case, specifically the Motion to

18 Disqualify.  In our motion --

19          THE COURT:  Let me jump in here and go back to

20 this table.

21          Has GrayRobinson entered an appearance in this

22 case?

23          MR. JOHNSON:  No, Your Honor.

24          THE COURT:  Okay.

25          MR. BABBITT:  Your Honor, I can reply to that.  I

```
 1   didn't know we were arguing the main motion that's before us
 2   in October.
 3            THE COURT:  We're not.  We're not, but that helps
 4   frame the relevance of the discovery.  And let me suggest --
 5            MR. BABBITT:  That is not correct.
 6            THE COURT:  Let me suggest this --
 7            MR. BABBITT:  It is completely incorrect.
 8            THE COURT:  Let me suggest this, sir.  First,
 9   let's wait until everybody's finished before we interject.
10   And I would recommend if you want a record here, before you
11   speak you identify yourself.
12            MR. BABBITT:  Appreciate that, Your Honor.
13            THE COURT:  All right.  So let me go back to you,
14   Mr. Babbitt, now.
15            MR. BABBITT:  Okay.  I could argue with what
16   counsel has just told you.  It is completely false.  Mr.
17   Johnson could probably do a better job of doing that than I.
18   I don't see the necessity for doing that except to say that
19   Mr. Johnson's representation was a long time ago, it related
20   to completely different matters, it is almost all entirely
21   relative to property transfers --
22            THE COURT:  Okay.  All of that will be argued in
23   front of Judge Whittemore.  I --
24            MR. BABBITT:  Well that --
25            THE COURT:  The finer points of that I think are
```

```
 1   left for the next motion.  The fact that he had
 2   representation of the defendants, one or more of the
 3   defendants for a number of years, though, is germane here.
 4          The question is whether or not -- frankly, I'm not
 5   aware of any privilege necessarily tied into a retainer
 6   agreement or the fee agreement here, and you suggest --
 7          MR. BABBITT:  But, Your Honor -- excuse me, this
 8   is Ted Babbitt.  A similar issue arose in a case I had
 9   within the Eastern District of New York, not that that's
10   dispositive of this, but with respect to that, those fee
11   agreements, what the Court decided there was to allow the
12   defendants to show the first page which shows the date, and
13   the last page which shows the signature, and not the body
14   which really just relates to a contractual arrangement
15   between the client and the lawyers.
16          And as to the fee sharing agreement, if there's --
17   we don't have any problem really with telling counsel what
18   our fee sharing arrangement is.  It seems awfully intrusive
19   and unnecessary, but I don't see the relevance of it.
20   Suffice it to say that we have a near equal fee sharing
21   arrangement -- not equal, but Mr. Johnson's involvement is
22   certainly substantial in the sense of his remuneration.  But
23   I just think this is an unnecessary witch hunt.  It's just
24   got nothing to do with this case and it's just a
25   distraction.
```

1      THE COURT:  Okay.  Let's move ahead to point

2  number two.  There may be questions of Mr. Johnson that may

3  come up here on that one.

4      MR. BABBITT:  (Indiscernible) --

5      THE COURT:  This is identified as evidence of

6  communications between Robert Johnson or his agent and any

7  of the following individuals:  Rinder, Rathbun, and then the

8  law firms, multiple law firms.  Again there's -- well, the

9  plaintiffs respond to this one:  Bob Johnson agrees to

10  provide a log of all privileged documents that are

11  responsive to this request.  And to the extent there are

12  unprivileged documents, he agrees to produce those.

13      Have you provided a privilege log to the

14  defendants?

15      MR. JOHNSON:  Yes, Your Honor, which I provided to

16  the defendants today.  And, Your Honor, if I might respond,

17  Judge, I don't have any documents that would not fall

18  outside of the privilege.

19      THE COURT:  Okay.  So you claim privilege on any

20  document that you have?

21      MR. JOHNSON:  Correct.  And again, Your Honor, I

22  do have the three hundred and some odd pages of documents

23  that would be responsive.  And, Your Honor, we have prepared

24  a privilege log from the date that I was first contacted in

25  this matter through the filing of the lawsuit.  I haven't

1    gone beyond that date.  If the Court directs me to, I can do

2    that, but just at this stage I have not done that.

3              THE COURT:  What's the magic of January 1, 2007?

4              MR. POTTER:  I don't know, Your Honor.  I mean we

5    want all of his documents.  We don't have any -- oh, I'm

6    sorry.  In our subpoena?

7              THE COURT:  Yeah.

8              MR. POTTER:  Oh, we just picked that as a -- we

9    didn't think there was anything prior to that time, Your

10   Honor, and we didn't want to send out a subpoena asking for

11   everything since the creation of the Earth.  We thought that

12   might be a little broad so we just picked a date that --

13             THE COURT:  And your past relationship with the

14   defendant entities, any of the defendant entities, ended

15   when?

16             MR. JOHNSON:  My best recollection was -- and

17   don't hold me to that -- I put in my declaration it was

18   2007, 2008, I think was the -- maybe -- I apologize, Judge.

19   Maybe --

20             THE COURT:  Somewhere around 2007, 2008?

21             MR. JOHNSON:  Whenever the --

22             THE COURT:  That's fine.  As a ballpark, that's

23   fine.

24             And then we record these proceedings

25   electronically.  It feeds off that mic.  So frankly you're

```
 1    better off --
 2              MR. JOHNSON:  Sitting here, yes.
 3              THE COURT:  All right.  It's painful to see you
 4    half crouched, half standing.
 5              MR. ZABAK:  I apologize, Judge.  Mr. Zabak.  It
 6    was about 15 years.
 7              THE COURT:  And it ended when?
 8              MR. ZABAK:  About 15 years ago.
 9              THE COURT:  About 15 years ago?
10              MR. ZABAK:  Yes.
11              THE COURT:  Gotcha.  All right.
12              Well, let me go to you on this second request
13    then.
14              MR. POTTER:  Thank you, Your Honor.  Obviously the
15    communications that Mr. Johnson has had in this case with
16    both the plaintiff and the plaintiff attorneys and the other
17    players is very critical.  Again --
18              THE COURT:  Let me jump in.  Do you seek any
19    communication he would have had when he was acting as
20    counsel for -- assuming you go back 15 years, that would be,
21    say, 2008, which would involve the time frame you've got in
22    your subpoena there.  Is he requesting matters that he's --
23    communications he would have made with the defendants when
24    he was acting as their counsel?
25              MR. POTTER:  No.  No.  That -- no.  We are not
```

1    requesting those.  We are requesting the communications from

2    that date forward with the people specified in category two,

3    none of which are the defendants or any representatives of

4    the defendants, Your Honor.  Our purpose is to focus on his

5    involvement in this litigation.  And we simply picked that

6    as kind of an arbitrary date so that we didn't have just a

7    vastly open-ended subpoena.

8         MR. JOHNSON:  And if I might interject, Judge, I

9    don't have any files related to these entities in my

10   possession, so.

11        THE COURT:  There is -- in any of the

12   stipulations, is there anything I read as suggesting -- and

13   I'm just bouncing around here, but bounce with me, if you

14   would.

15        There's no suggestion in anything that I've read

16   or in the proposed stipulation or this -- how this had been

17   formulated that there would be communications with Morgan &

18   Morgan, Brian Leung, Holcomb & Leung?

19        MR. POTTER:  Those are attorneys that previously

20   represented the Garcias, Your Honor.  This case had a life

21   in the State court system before it was brought into the

22   Federal court system, and those law firms were representing

23   the Garcias at one point or another.  That's why they're

24   included in the subpoena.

25        THE COURT:  All right.

1          MR. JOHNSON:  And, Judge, in my privilege log I do

2    have communications with John Morgan, Tucker Byrd (ph),

3    representatives of Morgan & Morgan.  I don't have any

4    written communications with this Brian -- and I forget what

5    his name is -- although I have spoken with him.

6          THE COURT:  Leung, Lueng (ph)?

7          MR. JOHNSON:  Leung, yeah.

8          THE COURT:  What is -- just give me the

9    highlights.  You've had the opportunity over at this table

10   to look at this privilege log.  What is the privilege here?

11   How do you have a privilege in relation to communications

12   with Rinder or Rathbun or one of the other law firms?

13   What's the nature of the privilege here?

14         MR. JOHNSON:  (No response.)

15         THE COURT:  What's your claim --

16         MR. JOHNSON:  I was going to let Mr. Babbitt

17   respond on that.

18         THE COURT:  No, I'm asking you first.

19         MR. JOHNSON:  Oh.  As far as my response is --

20         THE COURT:  You're the one claiming privilege.

21   What is the privilege?

22         MR. JOHNSON:  The privilege is Mr. Rinder was a

23   consultant who was retained by the attorneys to advise them

24   in the case.  And, of course, the communication that I had

25   with the attorneys would have been discussions regarding

1    potential clients and in preparation for filing of the

2    lawsuit.  And again, my role, Judge, was fairly limited --

3    is fairly limited in the case.

4            THE COURT:  Well what would be privileged about

5    any communication you would have had with Mr. Mike Rinder or

6    Mr. Marty Rathbun?

7            MR. JOHNSON:  The communication is restricted to

8    Rinder.  I didn't have any communication with Rathbun.  But

9    the communication with Rinder would have been discussions

10   about the potential claims that could be asserted, the

11   potential plaintiffs that were going to be involved in what

12   work Mr. Rinder would provide to attorneys who would be

13   representing these plaintiffs.

14           MR. BABBITT:  Excuse me.  Ted Babbitt.  I think

15   the technical privilege would be work product.  He is an

16   attorney in the case, he is representing the plaintiffs, he

17   is working with us in this case, as all of us are, and I

18   think that each -- he's filed a privilege log, so each one

19   will have to stand on its own.  But I would assume that

20   without looking at the documents the Court can't really tell

21   whether that's the case or not.

22           THE COURT:  Okay.  Thank you, Mr. Babbitt.

23           MR. POTTER:  Your Honor, again, the issues in this

24   case from our perspective is Mr. Johnson's communication of

25   privileged information to the plaintiffs, to the plaintiffs'

1    attorneys, and the plaintiffs' litigation consultants, which

2    I think is the hat that Mr. Rinder and Mr. Rathbun have put

3    on their heads in this matter.

4            Any way that Mr. Johnson or any potential for Mr.

5    Johnson to communicate the privileged information of the

6    defendants to the plaintiffs' team is relevant to the Motion

7    to Disqualify.  His -- we know that Mr. Rinder is now a

8    trial consultant for them, has a compensation agreement with

9    them, and is actively working with them in this case.

10           Again, when this case was in the State court

11   system he did file an affidavit.  That affidavit is attached

12   to the Motion to Disqualify, so it's in the record.  And in

13   that affidavit he professes that he has great knowledge of

14   the defendants' litigation tactics and strategies, he

15   professes that he was involved in attorney-client

16   communications, and he seeks -- he discloses the substance

17   of those communications.

18           Mr. Rathbun also serves that same role in other

19   litigation.  He has filed an affidavit in this litigation

20   professing of his involvement in litigation matters for the

21   defendants and in other cases, not in this case, but in

22   other cases pending before this Court.  He has also filed

23   affidavits saying I was involved in attorney-client

24   communications and here is what was said.

25           So both of these individuals are very much

1   involved in sharing the defendants' litigation strategies

2   and tactics.  They, along with Mr. Johnson, at least to some

3   degree, developed those tactics and strategies.  And the

4   three of them are now basically in the business of sharing

5   that information with potential litigants, and specifically

6   actual litigants.

7            THE COURT:  Put aside Mr. Johnson.  We're jumping

8   ahead.  Let's just talk about Mr. Johnson for a moment.

9            MR. POTTER:  Right.

10           THE COURT:  Put aside the other two.

11           MR. POTTER:  Well, I'm sorry.  I was trying to

12  focus on Mr. Rinder and Mr. Rathbun because you mentioned

13  specifically those people.  They are included in this

14  particular category, the subpoenas.  So, any communications

15  that Mr. Johnson has had with those individuals is relevant

16  to the issue of whether or not disqualification should

17  occur.

18           THE COURT:  Would it not -- assuming that it's in

19  relation to this litigation, would it not be work product --

20           MR. POTTER:  Well there is a big --

21           THE COURT:  -- the fact you identify those two as

22  consultants hired by the plaintiffs?

23           MR. POTTER:  They're -- to the -- twofold answer,

24  Your Honor.  First of all, if work product applies, it has

25  been waived, because there was no privilege log provided

1   until about 30 minutes before this hearing.  We've cited in

2   Paragraph 20 of our motion the cases that support a waiver

3   of the privilege in those sorts of situations.

4          Second of all, there is a huge exception to the

5   work product privilege, and that specifically is that if the

6   party seeking the information has a substantial need for

7   that information and cannot obtain it elsewhere the

8   privilege does not shield it.

9          Obviously in this case there is no other way to

10  find out the substance of the communications other than to

11  get the communications themselves.  And obviously we have a

12  substantial need for it, it goes to a very material issue in

13  the case, that being disqualification.

14          THE COURT:  Would you agree with me that on its

15  face the subpoena is overbroad to the extent that you want

16  any and all communications since -- what did I say?

17          MR. JOHNSON:  2007.

18          THE COURT:  Yeah, the date in 2007, January 1,

19  2007?

20          MR. POTTER:  Respectfully, no, Your Honor.  We

21  believe that Mr. Johnson began working with the Garcias some

22  time ago.  We don't know exactly or precisely when --

23          THE COURT:  Well then shouldn't I limit the

24  communication of any production, assuming that I require

25  some production, I don't know if I will or not, but

1   shouldn't I limit it to communications related strictly to

2   the Garcia matter?

3            MR. POTTER:  Well, yes.  I think that's the intent

4   of our subpoena, Your Honor.  We are trying to get those

5   communications that pertain to this case.  To the extent

6   that Mr. Johnson has communicated privileged information to

7   other people in other matters, other cases not involving the

8   Garcias, we're not trying to obtain that through this

9   subpoena.  We are trying to focus on the Garcias.  The point

10  being that this case has been going on for some time before

11  it was filed in this court.  So, for that reason, no, I

12  don't believe that it's overbroad.  Our intent was to limit

13  it to the Garcias, however.

14           THE COURT:  Okay.

15           MR. POTTER:  And/or their prior attorneys.

16           THE COURT:  All right.

17           MR. BABBITT:  Do you want to hear from me, Your

18  Honor?  This is Ted Babbitt.

19           THE COURT:  Go ahead.

20           MR. BABBITT:  First of all, as to the waiver

21  argument, our original response was that we didn't have to

22  file a privilege log because the defendants are -- have

23  never proven, and in our opinion will never prove, that

24  there was a conflict to begin with.  And as you can see from

25  the amount of work that Mr. Johnson has done creating this

1  privilege log, we felt that to go through all of our files

2  and essentially -- this is like any other lawsuit --

3  essentially go through hundreds and hundreds, if not

4  thousands and thousands of pages, all of which would be

5  privileged, this log, communications between us and our

6  clients, communications among counsel in matters not lightly

7  invaded by the law.

8       Defendants have -- just simply espousing they have

9  a need for this and, therefore, a privilege to look into the

10 files of lawyers that are representing a client should be

11 ignored is not enough, in my opinion.  I would think that

12 before the Court would entertain a waiver of work product

13 there would be a lot more that would have to be shown.  For

14 example, they could take a deposition in this case and ask

15 Mr. Johnson some questions.  They could do a lot of things

16 before we would have to start revealing everything that is

17 in our files, which is -- remember, Mr. Johnson has a copy

18 of everything that I have written, everything that -- I mean

19 we copy each other on everything.

20      So it is essentially using this what I think is

21 nothing more than a distraction, this motion, which purports

22 to not have Mr. Johnson be recused, but every other lawyer

23 for the plaintiff being recused for (indiscernible) 15 years

24 ago in which -- and in Mr. Rinder's case have been on the

25 Internet over and over and over again.

1          And with respect to Mr. Rinder, they've never

2    tried to stop him from speaking about whatever he knows.

3    There has been no legal action taken apart from going

4    through his garbage and following him relentlessly, him and

5    his family, with private detectives.  The defendants have

6    never sought to try to stop him, and we don't -- there's no

7    privilege between the defendants and Mr. Rinder, that I'm

8    aware of, and we can hire anybody we want.

9          And to start saying people we hire -- it would be

10   no different than them asking, which in a sense they have,

11   give us the information that you have communicated between

12   you and one of the people in your office, you know, an

13   investigator or an associate.  There's no difference.  There

14   are much easier ways and less intrusive ways to get them the

15   information that they think they need.  And so (a) we

16   haven't waived anything, and (b) I think that they have all

17   but admitted that this is work product.

18          THE COURT:  Mr. Zabak, let me bring you into the

19   loop.  It's not identified -- you're not identified -- the

20   documents that you've identified that you have are not

21   mentioned anywhere here in this report.  But as I understand

22   it, you have been subpoenaed and you acknowledge that you

23   have 25 or so documents, I don't know, some body of

24   documents.  Are we still fighting about that?

25          MR. ZABAK:  Apparently not.  I had a brief

1    discussion with Mr. Potter before our hearing today.  The

2    documents that I have -- all of the documents I have I got

3    from Mr. Johnson.  All or most of the documents, if not all,

4    are in possession of other attorneys.  The only reason why I

5    was involved in this case to begin with was we received --

6    our firm received letters from Mr. Potter's firm.  I believe

7    they were authored by either Mr. Pope or Mr. Potter.  And I

8    was asked by our managing shareholder to review the matter

9    with Mr. Johnson and to respond to those letters about a

10   course of action to take.

11          So I'm very tangentially involved.  I'm not

12   actually involved in the substance of the case itself.  I

13   spoke with Mr. Potter and he said, I believe, that since Mr.

14   Johnson now has been subpoenaed and since Mr. Johnson would

15   have whatever I have, that the subpoena served on me is

16   duplicative and unnecessary at this point.

17          THE COURT:  Do you agree?

18          MR. POTTER:  As I understand, Mr. Zabak told me

19   earlier that any documents he has are the same documents

20   that Mr. Johnson has.  We don't need to subpoena both of

21   them.

22          MR. ZABAK:  Right.  A bunch of them are subs,

23   actually.  I don't have -- I only have about 25 or so

24   documents that could arguably be responsive.

25          MR. JOHNSON:  Judge, may I be excused if there's

```
 1    no further --

 2              THE COURT:  Up to you.

 3              MR. JOHNSON:  I'd appreciate that if --

 4              THE COURT:  You're not of record and you weren't

 5    subpoenaed, so you're free to leave.  At this point, leave

 6    your documents here.  I haven't decided whether --

 7              MR. JOHNSON:  And I have left these with Mr.

 8    Zabak, and Mr. Zabak will be here for the duration of the

 9    hearing.  Thank you, Judge.

10              THE COURT:  Let's talk about Rinder and Rathbun

11    here, and let me begin with the defendants.

12              Let me just throw this out.  Why shouldn't either

13    party be able to take discovery of Rathbun or Rinder?

14              MR. POTTER:  Well --

15              THE COURT:  Without limitation.

16              MR. POTTER:  Certainly they would be able to take

17    their deposition.  But in those depositions, the defendants

18    would be entitled to assert a privilege to any question that

19    would --

20              THE COURT:  And the privilege would be what?

21              MR. POTTER:  Pardon me?

22              THE COURT:  The privilege would be what?  You

23    don't claim -- you're -- the defendants lawyers do not claim

24    an attorney-client relationship with Rinder or Rathbun.

25    This would be purely -- they act as consultants as I
```

1   understand that?

2        MR. BABBITT:  That's correct, Your Honor.  Not

3   Rathbun.  We have -- I think we should take Rathbun out of

4   the mix here.  The only communication any of us have had

5   with Mr. Rathbun was to get an affidavit, which is of

6   record.  We have not hired him, he hasn't communicated to us

7   anything.  So I think that we're really only talking about

8   Rinder.

9        MR. POTTER:  Again, Your Honor, if we're in a

10  deposition and either Mr. Rathbun or Mr. Rinder is asked a

11  question that seeks to discover the defendants' confidential

12  information, such as what conversations did you have with

13  such-and-such attorney representing the defendant and what

14  did he say, we obviously would object to that as being

15  confidential, privileged information.  That is exactly, we

16  think, the type of information that Mr. Rinder is giving to

17  the plaintiffs in this case.

18        And the reason we think that is because he filed

19  an affidavit in this case when it was pending in the State

20  court system revealing exactly that information.  His

21  affidavit was I was intensely involved in litigation for the

22  defendant for many, many years, I was involved in the

23  drafting of these documents, this is why we drafted them

24  this way, this is what we were trying to accomplish, this is

25  what our attorneys --

1          THE COURT:  But what prevents him from coming out

2     and saying that?

3          MR. POTTER:  Pardon me?

4          THE COURT:  Going on the Internet apparently as he

5     has.  I mean what prevents him from doing that?

6          MR. POTTER:  That is confidential --

7          THE COURT:  And I'm asking that in the context of

8     why I should, you know, structure discovery.

9          MR. POTTER:  Well, again, we believe that the

10    answers to those questions seek privileged, confidential

11    information for which the defendants have a privilege, i.e.,

12    attorney-client privilege, they're not entitled to discover

13    our litigation tactics and strategies, they're not entitled

14    -- they are not entitled to discover the opinions of our

15    counsel, they're not entitled to determine or discover our

16    litigation --

17         THE COURT:  Is that what he's being asked to

18    produce here, or is it simply, you know, based on his 25

19    years' experience with the defendant organizations,

20    whichever ones he may have been involved with?  He knows

21    that the practices are this and this is their approach or,

22    you know, whatever.

23         MR. POTTER:  Well, again, I think that what we

24    need to look at to answer that question is the affidavit

25    that he filed in this case.

```
 1              MR. POPE:  Your Honor, Wally Pope.  May I just
 2   make one small point here?
 3              THE COURT:  You can.
 4              MR. POPE:  I believe that Mr. Rinder signed a
 5   rather extensive confidentiality agreement with one or more
 6   of the defendants which prohibits him from revealing this
 7   sort of information and a whole host of other sorts of
 8   information.  And to my recollection, that agreement is
 9   somewhere in the massive papers relating to the
10   disqualification motion.  That's all I wanted to put in.
11              MR. BABBITT:  This is Ted Babbitt.  May I respond
12   to that?
13              THE COURT:  Yes.
14              MR. BABBITT:  I didn't hear you, is that a yes,
15   Your Honor?
16              THE COURT:  Yes.
17              MR. BABBITT:  Oh, I'm sorry.  If there is a
18   confidentiality agreement with Mr. Rinder, we are not a
19   party to it and our clients are not a party to it.  How
20   would that prevent -- if he breaches that agreement, how
21   does that then somehow affect us?  If he breaches that
22   agreement there are, I assume, remedies that the defendants
23   can utilize against Mr. Rinder.  He has a right of free
24   speech only affected by whatever agreement he's entered into
25   with them, and they have a way of stopping him if he -- or
```

1  seeking damages or whatever else, we are not in any way

2  bound by that confidentiality agreement if it exists.

3         And to answer Your Honor's initial question, there

4  is absolutely nothing wrong -- not only is there nothing

5  wrong with Mr. Rinder saying whatever he knows about the

6  church, which, by the way, he has put on the Internet over

7  and over and over again, and without objection, and without

8  any attempt to try and stop him.

9         So it is unusual, at least, to say the least, that

10  suddenly because we are representing the defendants in this

11  lawsuit the defendants, after years and years -- I don't

12  think Mr. Rinder has worked for them for years and years --

13  suddenly wish to engage in this -- in this charade of that

14  there's secrets that are being given out that have not been

15  previously given out in every blog and thousands of times.

16  There's nothing that prevents -- there is no privilege that

17  has been enunciated that I'm aware of.  And, in fact, the

18  law specifically says you have a right to contact prior

19  employees --

20         THE COURT:  Well, if he's been retained -- if he's

21  been retained as a consultant --

22         MR. BABBITT:  Absolutely.

23         THE COURT:  And you say Rathbun has not?

24         MR. BABBITT:  Has not, Your Honor.  We've had very

25  limited communications with Mr. Rathbun.  The only

1   communications we've had is to ask him to sign an affidavit.

2   He did that; the affidavit was filed.  That's it.  We have

3   had no other communications.  I've never spoken to him.  But

4   one lawyer in my office spoke to him about obtaining an

5   affidavit.  That's it.  The affidavit speaks for itself.

6           THE COURT:  To the extent that Mr. Rinder has

7   information, basic communications with defendants' lawyers,

8   would that not remain privileged?

9           MR. BABBITT:  Well I don't know, Your Honor.  But,

10  first of all, we've never spoken -- no one has ever spoken

11  with Mr. Rinder about any communications with any lawyers.

12  If -- I don't know whether or not we depend -- as you know,

13  the attorney-client privilege is not -- it is limited and it

14  depends on whether it was the providing of advice.  There

15  are several elements to it.  I don't know whether there is

16  that privilege between him and Mr. Rinder, but I can, as an

17  officer of the court tell the Court we have not discussed

18  with Mr. Rinder anything about what any lawyer has told him

19  ever.

20          In fact, to the contrary, his position is that he

21  was the one, not any lawyers that had created these

22  documents.  That's what he said in his affidavit.  And he

23  was a higher-up of the church for a long time.  And as I

24  said, you can look on the Internet and find everything that

25  he's said.  It's all there, and has been for years.

```
1            THE COURT:  Let me ask, let me go to the
2     defendants.
3            Do you have, apart from this claim, a
4     confidentiality agreement which Mr. Pope references, and I
5     assume that there is one, apart from that do you have some
6     other legal basis to protest his production in the matter?
7            MR. POPE:  Yes, Your Honor.  Again, I don't think
8     the issue is whether or not Mr. Rinder is subject to
9     discovery or subject to a deposition.  The issue is whether
10    or not plaintiffs' counsel is disqualified once they have
11    obtained the play book of litigation information.  And we
12    suspect that that's exactly what they are getting from Mr.
13    Rinder.
14            THE COURT:  And if they obtain -- let's assume
15    you're correct and say that they obtained it from Mr.
16    Rinder.  Would that be a disqualifying event?
17            MR. POTTER:  Yes.
18            THE COURT:  Why so?
19            MR. POTTER:  Again, the case law that says that
20    former employees are subject to discovery also say that
21    they're subject to discovery but not to the extent that they
22    can reveal confidential privileged information.  And that's
23    exactly what Mr. Rinder is doing.
24            If you look at the affidavit that he filed in this
25    case, he talks about communications he had with church
```

1    attorneys.  And Mr. Rathbun has done the exact same thing in

2    other cases.  He says I was involved in these conversations

3    and this is what attorneys told me.  And that is privileged

4    information in any deposition.

5            If the question at his deposition was what did the

6    defendant's attorney tell you, that would be objected to,

7    and I think that would be sustained by most courts.

8            THE COURT:  What about Mr. Rathbun -- Mr. Babbitt

9    says we should take him out of the discussion here, he

10   occupies a different position?

11           MR. POTTER:  Well we do not think he is in a

12   different position.  The plaintiffs are representing that

13   they have no compensation agreement with him, but there is

14   no question that he has participated in this litigation,

15   he's filed an affidavit in this case --

16           THE COURT:  And if he wishes to come forward and

17   to testify as any witness would have the right to do, or

18   perhaps even reluctantly do?

19           MR. POTTER:  He can do that.  It's a free country.

20   He's entitled to participate in anything that he wants to.

21   But again, he's not entitled to disclose confidential

22   information that belongs to the defendants.

23           If we're in a deposition setting, then we've got

24   counsel there, we can ferret those things out.  But when

25   there's these communications going on one way, there's no

 1   way that we know what's going on in those communications.

 2   That's why we're asking to see the communications.

 3          They won't give us the communications, they won't

 4   even give us a privilege log.  So we don't know what's going

 5   on except that when we look at the affidavits that both Mr.

 6   Rinder and Mr. Rathbun have filed in this court and others,

 7   we see that not only are they professing to have the

 8   confidential information but they're also professing a

 9   willingness to disclose it.  In fact, they have disclosed

10   it.

11          So it's not just us speculating as to what they

12   are going to do.  We have documented proof of what they are

13   doing.  They are revealing those conversations.

14          THE COURT:  The last two categories relate to

15   communications which relate to the payment of compensation

16   or remuneration to Mr. Rinder and Mr. Rathbun.

17          Plaintiffs say we stipulate that Mr. Rinder has

18   received compensation.  If you wish to see documents

19   sufficient to demonstrate the amount of compensation, we

20   will provide them.

21          Are we asserting any claim of privilege there?

22   It's hard to read that as reserving anything that needs the

23   Court's interference on.

24          MR. BABBITT:  Well, first of all, as to number

25   six, that's been agreed to.  And I just think it's a waste

 1   of time, I guess.  But if they want, I offered -- if they

 2   want us to go through and get our bookkeeper to find the

 3   bills and give them to him.  All they'll find out is -- and

 4   I suppose that the amount that he has received would be

 5   relevant if he -- if we decide to use him as a witness at

 6   any time to show his, you know, his interest in the outcome.

 7   But we just -- we didn't see the need.  We were offering

 8   this as an agreement to just, you know -- we have paid him.

 9   If you want to know how much we paid him?  We'll tell you

10   that too.  Or if they ask, we'll give them a copy of the

11   checks or the bills or whatever they want.  It's just --

12   it's another distraction, Your Honor.

13            THE COURT:  Is there a retainer agreement with

14   this witness -- with this consultant?

15            MR. BABBITT:  Um, I don't remember, Your Honor.

16   There probably is.  With Mr. Rinder.

17            THE COURT:  Right.  Right.  With regard to Mr.

18   Rathbun, just to put it on the record, the plaintiffs'

19   response says we've confirmed that he received -- that he

20   has received no compensation and there is no agreement to

21   compensate him, and defendants says they accept that at this

22   point; is that correct?

23            MR. POTTER:  Yes.  We accept their representation,

24   Your Honor.  We have no evidence to the contrary at this

25   point in time.  If we come up with something, we'll

1    certainly challenge that.

2              THE COURT:  Okay.

3              MR. POTTER:  Because we suspect otherwise.  But we

4    have no proof.

5              THE COURT:  All right.

6              MR. BABBITT:  Your Honor, as an officer of the

7    court -- and this is Mr. Babbitt -- as an officer of the

8    court we have represented we don't have an agreement.  And I

9    take umbrage at someone saying we suspect otherwise.  You

10   know, if there were such an agreement I would not lie to a

11   federal judge.

12             MR. POTTER:  Mr. Babbitt, I cast no dispersions in

13   your direction.  I'm -- my comment was more with respect to

14   Mr. Rathbun than it was to you.  I have told the Court that

15   I accept your representation.

16             Your Honor, if we could go back just a tad,

17   categories two, three and four, we have also specifically

18   asked for time records.  The reason that we asked for those

19   time records is while they would not disclose the content of

20   any of the communications, they would be relevant to the

21   amount, the degree, the frequency and the extent of

22   communications between Mr. Johnson, Mr. Rinder and Mr.

23   Rathbun.  And the reason that that is important is that

24   there is case law.  We have cited it in our Motion for

25   Disqualification, and that case law says that if there is a

1  showing that former counsel has had substantial

2  communications with co-counsel then a rebuttable presumption

3  arises that confidential information was exchanged.

4         So I just wanted to bring that to the Court's

5  attention.  We are asking for those time records for that

6  reason.  There is case law that says that it's relevant.  It

7  allows us to at least establish a presumption.  There has

8  been absolutely no claim of privilege to those records.

9  They are not on the privilege log.  No one has even

10  addressed the issue, other than me, that I wanted to bring

11  that to the Court's attention.  We have specifically asked

12  for time records for Mr. Johnson, as well as the three law

13  firms, GrayRobinson, Babbitt Johnson, and Weil & Quaranta,

14  because those records themselves, while they should contain

15  no privileged information whatsoever, are in fact very

16  relevant to our motion.

17         And I also wanted to point out that we're not just

18  doing this discovery for the fun of it.  The district court

19  has set an evidentiary hearing.  We're going to be put to

20  the proof of our test -- the test of our proof, rather --

21  and we need this information for purposes of that

22  evidentiary hearing.

23         MR. BABBITT:  If I may respond, this is Ted

24  Babbitt.

25         THE COURT:  You don't need to.  Let me back up a

1    little bit myself.

2          Respond to Mr. Potter's argument that -- let's

3    deal with Mr. Rinder, but I suppose this aspect of it

4    applies to Rathbun as well -- that they possess confidential

5    information by reason of their positions, their former

6    positions with the defendants, and that accordingly the

7    defendants may claim privilege for their disclosure of such

8    confidential things.  And I'm not talking about

9    communications they may have had with church counsel, but in

10   the broad context of being in possession of what might be

11   viewed as confidential and proprietary information.  May

12   they assert -- may the defendants assert that as a bar to

13   any type of disclosure?

14         MR. BABBITT:  No, Your Honor, I don't believe so.

15   Not -- if you look at the H.B.A. case, which we cited in the

16   paper that you're looking at, that's a (indiscernible) case.

17   It's a case involving a nursing home in which the plaintiff

18   sought to interview former employees of a nursing home and

19   discover exactly the same thing that they're talking about

20   here, which is essentially the way they handle things and

21   the doctors that they use and things like that.

22         If -- if they are going to claim some sort of a

23   privilege for that, they have to enunciate what it is.  I

24   have not heard why it is, and I have not heard a response to

25   your question as to why Mr. Rinder is foreclosed apart from

 1   this confidentiality rule, and I've already spoken to that,

 2   from saying anything that he knows.  He's told me -- if

 3   we're not talking about attorney matters, I've talked about

 4   that as well, but they haven't met any burden whatsoever to

 5   show any kind of a privilege that they can enunciate.  He

 6   has a right and he has exercised that right over and over

 7   again without objection.  And I don't understand what it is

 8   or how it is that he is foreclosed from doing that.  When an

 9   employee of a corporation finds out how they do things -- I

10   mean, this happens with lobbyists all the time, you know.

11   People that are formerly congressmen become lobbyists

12   because they know the inner workings of the Congress.

13   That's not privileged.  And neither is a nursing home,

14   either is this corporation, the Scientology Corporation.

15   It's just not -- it doesn't create any kind of a bar against

16   telling us whatever he knows about the way they conduct

17   their business.  That's at the heart of it.

18        THE COURT:  Mr. Pope points out there is a

19   confidentiality agreement, which I assume would allow them

20   to protest if the person was doing this.

21        But let me ask the defendants, why wouldn't that

22   -- assuming there is such a thing -- have you not waived any

23   objection under that by reason of allowing him to do what

24   he's apparently done in the past, which is broadcast to the

25   world, if you will, his views and statements that are

1   germane to this litigation as well, without taking steps to

2   enforce the confidentiality agreement?  Shouldn't I find a

3   waiver in that?

4           MR. POTTER:  Well, first of all, Your Honor, we

5   don't necessarily agree with Mr. Babbitt's representation

6   that Mr. Rathbun and Mr. Rinder have broadcast all of this

7   information.

8           The information that we're seeking to protect is

9   not the fact that these two gentlemen no longer like my

10  client.  What we're trying to protect is this so-called

11  litigation play book information.  There's no question that

12  that information is confidential, it is protected, it is

13  privileged, and the privilege belongs to the defendant

14  entity, not to the players, the individual players that were

15  the developers of that information.

16          To the extent that Mr. Rinder or Mr. Rathbun seeks

17  to disclose that litigation play book information, they

18  cannot do so.  It's privileged, and the privilege belongs to

19  their former employer.  There is simply no question about

20  that.  Those cases are in the Motion to Disqualify.  And

21  that's what we are trying to protect here, but more

22  importantly, again, it's not a question of whether those

23  gentlemen are subject to discovery.  It's a question of

24  whether the plaintiffs' firms are disqualified because they

25  have sought that information, they have obtained that

1    information, and they are now seeking to use it to their

2    advantage and to the disadvantage of the defendant.  This is

3    a motion about whether they are to be disqualified.  It's

4    not a motion about whether Mr. Rinder or Mr. Rathbun are

5    subject to a deposition.

6            MR. BABBITT:  Your Honor, I just -- this is Ted

7    Babbitt again.  I just pulled up on my computer under Google

8    Mike Rinder, and there's probably hundreds of sites where he

9    has talked about not just he doesn't like this company, but

10   what they do, their practices, how they -- what --

11   everything about their so-called strategy, the way they

12   conduct business.  If this is not a waiver, I cannot imagine

13   what would be.  In any case, we're not a party to this

14   confidentiality agreement.  That would be between them and

15   Mr. Rinder.

16           The first thing on this is Mike Rinder's blog in

17   which he says that David Miscavige has lost his way, he's

18   giving money to people he shouldn't, he's turning over cash,

19   provides case names and (indiscernible) remarkable -- I mean

20   this is all about the president of their company.  And

21   nothing's been done to stop it.

22           THE COURT:  Okay.  I've run out of question marks

23   on my notes here.  Anybody have anything else to offer?

24           MR. POTTER:  Your Honor, we did find a couple of

25   additional cases if I could give you the citations.

```
 1              THE COURT:  All right.

 2              MR. POTTER:  We cited some cases holding that fee

 3   agreements are not privileged.  We cited those in our

 4   motion, but we found two additional cases, both of which are

 5   Middle District of Florida cases.  The first case is 230

 6   Federal Rules Decision 688.  It's a case -- a 2005 case out

 7   of the Middle -- out of the Orlando Division, Universal City

 8   Development.  The other case is out of Fort Myers, it's

 9   Arthrex vs. Parkus Medical.  It's at 2012 WL 5382050.  And

10   then there is one case that we were able to find involving

11   litigation trial consultant fee agreements.  It's a case out

12   of New York.  It's found at 166 Federal Rules Decision 284.

13   And that's State of New York vs. Solvent Chemical Company.

14              Thank you, Your Honor.

15              THE COURT:  Anything else from the plaintiffs?

16              MR. BABBITT:  No, Your Honor.

17              THE COURT:  Mr. Zabak, go ahead and leave the

18   documents.  I'm still undecided about this.  Every time I

19   wade into an in camera review I get extreme headaches.

20              MR. ZABAK:  I'll leave them with you then.

21              THE COURT:  I'm less than 24 hours back from

22   vacation.  I'm not looking at getting that sort of response

23   as of yet.  But anyway, leave them and we'll -- if we

24   determine that we need to do that we will, and we'll notify

25   counsel.
```

1          MR. ZABAK:  And, Your Honor, I did understand, if

2     I might ask for clarification, that pursuant to my

3     discussion with Mr. Potter, that I'm excused from the

4     subpoena.

5          THE COURT:  For the hearing?

6          MR. ZABAK:  No, excuse me, from the subpoena for

7     the production or for -- at the hearing given that --

8          THE COURT:  At present you are, as I understand

9     it.

10         MR. POTTER:  Yeah, I'm not -- yes.

11         MR. ZABAK:  Mr. Johnson has everything I have, and

12    more.

13         MR. POTTER:  We don't need to subpoena the same

14    documents twice.

15         THE COURT:  All right.  Thank you.

16         MR. ZABAK:  Thank you, Your Honor.

17              (Proceedings concluded at 3:00 p.m.)

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2          I, Howard W. Jones, certify that the foregoing is
a correct transcript from the record of proceedings
3    in the above-entitled matter.

4

5                                    /s *Howard W. Jones*

6                                    _____
                                     Howard W. Jones, RPR
                                     Official Court Reporter
7                                    United States District Court
                                     Middle District of Florida
8                                    Tampa Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

/
/s [1] 46/5

**1**

100 [1] 2/3
101 [1] 2/17
1010 [1] 2/18
1200 [1] 2/17
15 [5] 17/6 17/8 17/9 17/20 25/23
16 [1] 12/10
1600 [1] 2/20
1641 [1] 2/3
166 [1] 44/12
1818 [2] 2/11 2/14

**2**

20 [1] 23/2
200 [2] 2/6 2/20
2005 [1] 44/6
2007 [6] 16/3 16/18 16/20 23/17 23/18
  23/19
2008 [3] 16/18 16/20 17/21
2012 [1] 44/9
2013 [1] 1/8
230 [1] 44/5
24 [1] 44/21
25 [3] 26/23 27/23 30/18
2500 [1] 2/4
27TBM [2] 1/7 5/6
284 [1] 44/12
2:00 [1] 1/9
2:30 [1] 7/4

**3**

30 [1] 23/1
305/372-5352 [1] 2/7
32 [1] 12/10
33131 [1] 2/7
33409 [1] 2/3
33602 [1] 2/17
33701 [1] 2/21
33757 [2] 2/10 2/14
3952 [1] 2/21
3:00 [2] 1/9 45/17
3:50 [1] 7/3

**4**

46 [1] 3/2

**5**

5352 [1] 2/7
5382050 [1] 44/9
561/684-2500 [1] 2/4

**6**

60 [1] 9/17
688 [1] 44/6

**7**

727/461-1818 [2] 2/11 2/14
727/820-3952 [1] 2/21

**8**

813/221-1010 [1] 2/18
8:13-cv-220-T-27TBM [1] 5/6

**9**

900 [1] 2/6
911 [2] 2/10 2/13

**A**

able [3] 28/13 28/16 44/10
about [33] 11/10 12/9 17/6 17/8 17/9
  20/4 20/10 22/8 23/1 26/2 26/24 27/9
  27/23 28/10 29/7 32/5 33/1 33/11 33/18
  34/25 35/6 40/8 40/19 41/3 41/5 41/16
  42/19 43/3 43/4 43/9 43/11 43/20 44/18
above [1] 46/3
above-entitled [1] 46/3
absolutely [3] 32/4 32/22 39/8
accept [3] 37/21 37/23 38/15
accomplish [1] 29/24
accordingly [1] 40/6
acknowledge [1] 26/22
act [1] 28/25
acting [2] 17/19 17/24
action [2] 26/3 27/10
actively [1] 21/9
actual [1] 22/6
actually [2] 27/12 27/23
additional [2] 43/25 44/4
additionally [1] 9/22
addressed [3] 8/9 8/19 39/10
addressing [1] 6/22
Administrations [1] 6/8
admitted [1] 26/17
advantage [1] 43/2
advice [1] 33/14
advise [1] 19/23
affect [1] 31/21
affected [1] 31/24
affidavit [15] 21/11 21/11 21/13 21/19
  29/5 29/19 29/21 30/24 33/1 33/2 33/5
  33/5 33/22 34/24 35/15
affidavits [3] 11/10 21/23 36/5
after [1] 32/11
again [18] 5/7 15/8 15/21 17/17 20/2
  20/23 21/10 25/25 29/9 30/9 30/23 32/7
  34/7 34/19 35/21 41/7 42/22 43/7
against [2] 31/23 41/15
agent [1] 15/6
ago [5] 13/19 17/8 17/9 23/22 25/24
agree [3] 23/14 27/17 42/5
agreed [2] 9/6 36/25
agreement [37] 9/4 9/10 9/10 9/19 9/23
  10/10 10/11 10/12 10/13 10/17 10/17
  10/23 11/15 11/16 12/3 12/4 14/6 14/6
  14/16 21/8 31/5 31/8 31/18 31/20 31/22
  31/24 32/2 34/4 35/13 37/8 37/13 37/20
  38/8 38/10 41/19 42/2 43/14
agreements [2] 11/2 11/3 11/4 11/25
  14/11 44/3 44/11
agrees [2] 15/9 15/12
ahead [5] 5/12 15/1 22/8 24/19 44/17
aided [1] 1/22
al [1] 1/10
all [42] 5/21 6/10 6/14 7/7 7/18 8/9 8/14
  8/20 10/17 11/8 13/13 13/20 15/2
  15/10 16/5 17/3 17/11 18/25 20/17
  22/24 23/4 23/16 24/16 24/20 25/5 25/4
  26/16 27/2 27/3 27/3 31/10 33/10 33/25
  36/24 37/3 38/5 41/10 42/4 42/6 43/20
  44/1 45/15
allow [2] 14/11 41/19
allowing [1] 41/23
allows [1] 39/7
almost [1] 13/20
along [1] 22/2
already [3] 11/7 12/12 41/1
also [10] 2/23 5/19 6/3 11/15 21/18
  21/22 34/20 36/8 38/17 39/17
although [2] 5/14 19/5
am [2] 6/2 7/24
Amanda [2] 2/5 6/3
among [3] 9/19 9/23 25/6
amount [4] 24/25 36/19 37/4 38/21

And/or [1] 24/15
another [2] 6/11 18/23 37/12
answer [2] 22/23 30/24 32/3
answers [1] 30/10
anxiously [1] 7/4
any [47]
anybody [3] 6/14 26/8 43/23
anything [12] 12/14 16/9 18/12 18/15
  26/16 29/7 33/18 35/20 36/22 41/2
  43/23 44/15
anyway [1] 44/23
anywhere [1] 26/21
apart [4] 26/3 34/3 34/5 40/25
apologize [2] 16/18 17/5
apparently [4] 8/9 26/25 30/4 41/24
appearance [3] 5/13 11/22 12/21
appears [1] 12/13
applies [2] 22/24 40/4
appreciate [2] 13/12 28/3
approach [2] 7/17 30/21
arbitrary [1] 18/6
are [62]
areas [1] 8/8
arguably [1] 27/24
argue [1] 13/15
argued [1] 13/22
arguing [1] 13/1
argument [6] 7/22 7/23 8/2 8/14 24/21
  40/2
arises [1] 39/3
arose [1] 14/8
around [2] 16/20 18/13
arrangement [3] 14/14 14/18 14/21
Arthrex [1] 44/9
as [52]
aside [2] 22/7 22/10
ask [10] 8/6 8/13 8/21 11/21 25/14 33/1
  34/1 37/10 41/21 45/2
asked [5] 9/25 27/8 29/10 30/17 38/18
  38/18 39/11
asking [6] 16/10 19/18 26/10 30/7 36/2
  39/5
aspect [1] 40/3
assert [3] 28/18 40/12 40/12
asserted [2] 20/10
asserting [1] 36/21
assist [1] 11/16
associate [1] 26/13
assume [7] 8/9 12/2 20/19 31/22 34/5
  34/14 41/19
assuming [4] 17/20 22/18 23/24 41/22
at [32] 7/3 7/14 8/6 8/13 9/16 16/2 18/23
  19/9 19/10 20/20 22/2 27/16 28/5 30/24
  32/9 34/24 35/5 36/5 37/5 37/21 37/24
  38/9 39/7 40/15 40/16 41/17 44/9 44/12
  44/22 45/7 45/8 45/17
attached [1] 21/11
attempt [1] 32/8
attention [2] 39/5 39/11
attorney [15] 5/15 5/20 9/2 9/15 10/22
  12/10 20/16 21/15 21/23 28/24 29/13
  30/12 33/13 35/6 41/3
attorney-client [7] 9/15 10/22 21/15
  21/23 28/24 30/12 33/13
attorneys [11] 17/16 18/19 19/23 19/25
  20/12 21/1 24/15 27/4 29/25 35/1 35/3
audible [1] 6/16
authored [1] 27/7
Ave [1] 2/20
aware [3] 14/5 26/8 32/17
awfully [1] 14/18

**B**

Babbitt [21] 2/2 2/2 6/4 7/24 8/3 8/20

**B**

Babbitt... [15] 9/19 9/23 13/14 14/8 19/16 20/14 20/22 24/18 31/11 35/8 38/7 38/12 39/13 39/24 43/7
Babbitt's [1] 42/5
back [6] 12/19 13/13 17/20 38/16 39/25 44/21
ballpark [1] 16/22
bar [2] 40/12 41/15
based [1] 30/18
basic [1] 33/7
basically [3] 8/8 9/18 22/4
basis [1] 34/6
be [43] 6/24 6/25 7/4 8/19 12/5 12/13 13/22 15/2 15/23 16/12 17/20 18/17 20/4 20/10 20/11 20/12 20/15 22/19 25/4 25/10 25/13 25/13 25/22 26/9 27/24 27/25 28/8 28/13 28/16 28/18 28/20 28/22 28/25 34/16 35/6 35/7 37/4 38/20 39/19 40/10 43/3 43/13 43/14
Beach [1] 2/3
because [9] 22/12 22/25 24/22 29/18 32/10 38/3 39/14 41/12 42/24
become [1] 41/11
been [19] 8/9 18/16 19/25 20/9 22/25 24/10 25/24 26/3 26/22 27/14 30/20 32/14 32/17 32/20 32/21 33/25 36/25 39/8 43/21
before [11] 1/16 13/1 13/9 13/10 18/21 21/22 23/1 24/10 25/12 25/16 27/1
began [1] 23/21
begin [7] 6/22 8/5 8/20 8/22 24/24 27/5 28/11
behalf [9] 2/4 2/8 2/11 2/15 2/18 2/22 5/22 6/12 10/14
being [8] 12/5 23/13 24/10 25/23 29/14 30/17 32/14 40/10
believe [10] 5/24 7/7 7/10 23/21 24/12 27/6 27/13 30/9 31/4 40/14
belongs [3] 35/22 42/13 42/18
Berman [2] 2/16 6/11
best [1] 16/16
better [2] 13/17 17/1
between [10] 10/23 12/3 14/15 15/6 25/5 26/7 26/11 33/16 38/22 43/14
beyond [1] 16/1
big [1] 22/20
bills [2] 37/3 37/11
Biscayne [1] 2/6
bit [1] 40/1
blog [2] 32/15 43/16
Blvd [2] 2/6 2/17
Bob [4] 5/14 7/1 7/9 15/9
body [2] 14/13 26/23
Bokor [2] 2/9 2/13
book [5] 11/13 11/19 34/11 42/11 42/17
bookkeeper [1] 37/2
both [7] 11/3 11/14 17/16 21/25 27/20 36/5 44/4
bounce [1] 18/13
bouncing [1] 18/13
bound [1] 32/2
breaches [2] 31/20 31/21
Brian [2] 18/18 19/4
brief [1] 26/25
bring [3] 26/18 39/4 39/10
broad [2] 16/12 40/10
broadcast [2] 41/24 42/6
broadly [1] 10/11
brought [3] 7/16 7/18 18/21
bunch [1] 27/22
burden [1] 41/4

**BURGOS [1] 1/5**
Burns [2] 2/9 2/13
business [3] 22/4 41/17 43/12
but [41] 5/20 7/22 8/22 9/14 10/1 10/3 14/7 14/10 14/19 14/21 14/22 16/2 18/13 20/8 20/19 21/21 23/25 26/22 26/17 26/21 28/17 30/1 33/3 33/9 33/16 34/21 35/13 35/21 35/24 36/8 37/1 37/7 38/3 40/3 40/9 41/4 41/21 42/21 43/9 44/4 44/23
Byrd [1] 19/2

**C**

calendar [1] 7/3
call [1] 5/3
called [4] 5/2 11/13 42/10 43/11
camera [2] 7/20 44/19
can [15] 5/11 8/10 10/24 12/25 16/1 24/24 26/8 31/3 31/23 33/16 33/24 34/22 35/19 35/24 41/5
can't [1] 20/20
cannot [3] 23/7 42/18 43/12
capacity [1] 5/19
case [50]
cases [11] 12/10 21/21 21/22 23/2 24/7 35/2 42/20 43/25 44/2 44/4 44/5
cash [1] 43/18
cast [1] 38/12
categories [2] 36/14 38/17
category [2] 18/2 22/14
Central [1] 2/20
certain [2] 6/18 7/14
certainly [5] 11/2 14/2 14/22 28/16 38/1
CERTIFICATE [1] 3/2
certify [1] 46/2
challenge [1] 38/1
charade [1] 32/13
checks [1] 37/11
Chemical [1] 44/13
Chestnut [2] 2/10 2/13
choice [1] 8/1
church [9] 1/10 5/5 5/23 5/23 6/12 32/6 33/23 34/25 40/9
citations [1] 43/25
cited [5] 23/1 38/24 40/15 44/2 44/3
City [1] 44/7
claim [1] 9/8 9/9 15/19 19/15 28/23 28/23 34/3 36/21 39/8 40/7 40/22
claiming [1] 19/20
claims [2] 12/11 20/10
clarification [1] 45/2
Clearwater [2] 2/10 2/14
client [12] 9/15 10/22 10/22 10/23 14/15 21/15 21/23 25/10 28/24 30/12 33/13 42/10
clients [6] 8/25 9/12 9/13 20/1 25/6 31/19
co [1] 39/2
co-counsel [1] 39/2
come [4] 5/10 15/3 35/16 37/25
coming [1] 30/1
comment [1] 38/13
communicate [2] 11/19 21/5
communicated [3] 24/6 26/11 29/6
communication [9] 17/19 19/24 20/5 20/7 20/8 20/9 20/24 23/24 29/4 29/6
communications [34] 15/6 17/15 17/23 18/1 18/17 19/2 19/4 19/11 21/16 21/17 21/24 22/14 23/10 23/11 23/16 24/1 24/5 25/5 25/6 32/25 33/1 33/3 33/7 33/11 34/25 35/25 36/1 36/2 36/3 36/15 38/20 38/22 39/2 40/9
company [3] 43/9 43/20 44/13

compensate [1] 37/21
compensation [6] 31/8 35/13 36/5 36/18 36/19 37/20
completely [3] 13/7 13/16 13/20
computer [2] 1/22 43/7
computer-aided [1] 1/22
concerned [1] 7/23
concluded [1] 45/17
conduct [2] 41/16 43/12
Confer [1] 8/8
confidential [13] 12/8 29/11 29/15 30/6 30/10 34/22 35/21 36/8 39/3 40/4 40/8 40/11 42/12
confidentiality [8] 31/5 31/18 32/2 34/4 41/1 41/19 42/2 43/14
confirmed [1] 37/19
conflict [1] 24/24
Congress [1] 41/12
congressmen [1] 41/11
consultant [5] 19/23 21/8 32/21 37/14 44/11
consultants [3] 21/1 22/22 28/25
contact [1] 32/18
contacted [1] 15/24
contain [1] 39/14
content [1] 38/19
contents [2] 9/3 9/13
context [2] 30/7 40/10
contractual [1] 14/14
contrary [2] 33/20 37/24
conversations [3] 29/12 35/2 36/13
copy [4] 7/17 25/17 25/19 37/10
corporation [4] 10/14 41/9 41/14 41/14
correct [14] 6/4 6/5 6/6 7/9 7/13 8/4 8/10 10/20 13/5 15/21 29/2 34/15 37/22 46/2
could [8] 13/15 13/17 20/10 20/14 25/15 27/24 38/16 43/25
counsel [16] 5/21 11/16 11/20 12/16 13/16 14/17 17/20 17/24 25/6 30/15 34/10 35/24 39/1 39/2 40/9 44/25
country [1] 35/19
couple [1] 43/24
course [2] 19/24 27/10
court [26] 1/1 1/22 3/2 5/2 7/17 7/19 7/20 14/11 16/1 18/21 18/22 20/20 21/10 21/22 24/11 25/12 29/20 33/17 33/17 36/6 38/7 38/8 38/14 39/18 46/6 46/7
Court's [1] 36/23 39/4 39/11
courts [1] 35/7
create [1] 43/24
created [1] 33/21
creating [1] 24/25
creation [1] 16/11
critical [1] 17/17
crouched [1] 17/4
crux [1] 12/7
cv [2] 1/7 5/6

**D**

damages [1] 32/1
date [8] 7/14 14/12 15/24 16/1 16/12 18/2 18/6 23/18
David [1] 43/17
deal [1] 40/3
decide [2] 7/20 37/5
decided [1] 14/11 28/6
Decision [2] 44/6 44/12
declaration [1] 16/17
defendant [7] 16/14 16/14 29/13 29/22 30/19 42/13 43/2
defendant's [1] 35/6
defendants [36] 1/11 2/11 2/15 2/18

## D

defendants... [32] 2/22 6/19 9/7 14/2
14/3 14/12 15/14 15/16 17/23 18/3 18/4
21/6 21/21 24/22 25/8 26/5 26/7 28/11
28/17 28/23 30/11 31/6 31/22 32/10
32/11 34/2 35/22 37/21 40/6 40/7 40/12
41/21
defendants' [6] 11/11 12/9 21/14 22/1
29/11 33/7
degree [2] 22/3 38/21
DEL [1] 1/5
delivered [1] 7/19
demonstrate [1] 36/19
denied [1] 9/12
depend [1] 33/12
depends [1] 33/14
deposition [8] 25/14 28/17 29/10 34/9
35/4 35/5 35/23 43/5
depositions [1] 28/17
detectives [1] 26/5
determine [2] 30/15 44/24
developed [1] 22/3
developers [1] 42/15
Development [1] 44/8
did [8] 21/11 23/16 29/12 29/14 33/2
35/5 43/24 45/1
didn't [10] 7/2 7/3 13/1 16/9 16/10 18/6
20/8 24/21 31/14 37/7
difference [1] 26/13
different [4] 13/20 26/10 35/10 35/12
digitally [1] 1/21
direction [1] 38/13
directs [1] 16/1
disadvantage [1] 43/2
disagree [1] 9/7
disclose [4] 35/21 36/9 38/19 42/17
disclosed [1] 36/9
discloses [1] 21/16
disclosure [4] 11/6 12/2 40/7 40/13
discover [5] 29/11 30/12 30/14 30/15
40/19
discovery [10] 6/18 11/9 13/4 28/13 30/8
34/9 34/20 34/21 39/18 42/23
discussed [1] 33/17
discussion [4] 8/11 27/1 35/9 45/3
discussions [1] 19/25 20/9
dispersions [1] 38/12
dispositive [1] 14/10
dispute [1] 6/18
disputes [1] 8/10
disqualification [5] 11/8 22/16 23/13
31/10 38/25
disqualified [3] 34/10 42/24 43/3
Disqualify [6] 7/12 12/13 12/18 21/7
21/12 42/20
disqualifying [1] 34/16
distraction [3] 14/25 25/21 37/12
district [7] 1/1 1/1 14/9 39/18 44/5 46/7
46/7
DIVISION [3] 1/2 44/7 46/8
do [32] 5/11 8/13 8/13 9/8 9/8 9/12 9/13
10/24 10/25 13/17 14/24 15/22 16/1
17/18 19/1 19/11 24/17 25/15 27/17
28/23 34/3 34/5 35/11 35/17 35/18
35/19 36/12 41/9 41/23 42/18 43/10
44/24
doctors [1] 40/21
document [6] 1/16 8/11 8/18 9/17 10/1
15/20
documented [1] 36/12
documents [25] 7/14 7/19 7/20 7/24
15/10 15/12 15/17 15/22 16/5 20/20
26/20 26/23 26/24 27/2 27/2 27/3 27/19
27/19 27/24 28/6 28/23 33/22 36/13
44/16 45/14
does [2] 23/8 31/21
doesn't [2] 41/15 43/9
doing [9] 11/18 13/17 13/18 30/5 34/23
36/13 39/18 41/8 41/20
don't [34] 7/10 7/23 8/5 9/3 13/18 14/17
14/19 15/17 16/4 16/5 16/17 18/9 19/3
23/22 23/25 24/12 26/6 26/23 27/20
27/23 28/23 32/11 33/9 33/12 33/15
34/7 36/4 37/15 38/8 39/25 40/14 41/7
42/5 45/13
done [6] 7/16 16/2 24/25 35/1 41/24
43/21
downstairs [1] 7/5
drafted [1] 29/23
drafting [1] 29/23
duplicative [1] 27/16
duration [1] 28/8

## E

each [3] 20/18 20/18 25/19
earlier [1] 29/14
Earth [1] 16/11
easier [1] 26/14
Eastern [1] 14/9
effort [1] 8/19
either [4] 27/7 28/12 29/10 41/14
electronically [2] 5/8 16/25
elements [1] 33/15
else [4] 6/14 32/1 43/23 44/15
elsewhere [1] 42/19
employed [2] 10/4 10/7
employee [1] 41/9
employees [3] 32/19 34/20 40/18
employer [1] 42/19
ended [3] 16/14 17/7 18/7
enforce [1] 42/2
engage [1] 32/13
enough [1] 25/11
entered [3] 11/22 12/21 31/24
entertain [1] 25/12
entirely [1] 25/8
entities [4] 7/8 16/14 16/14 18/9
entitled [8] 28/18 30/12 30/13 30/14
30/15 35/20 35/21 46/3
entity [1] 42/14
enunciate [2] 40/23 41/5
enunciated [1] 32/17
envelope [1] 7/19
equal [2] 14/20 14/21
espousing [1] 25/8
Esquire [7] 2/2 2/5 2/9 2/12 2/16 2/19
2/23
essentially [6] 8/25 10/15 25/2 25/3
25/20 40/20
establish [2] 39/7
et [1] 1/10
even [4] 9/25 35/18 36/4 39/9
event [1] 34/16
ever [2] 33/10 33/19
every [3] 25/22 32/15 44/18
everybody [1] 5/12
everybody's [1] 13/9
everything [8] 16/11 25/16 25/18 25/18
25/19 33/24 43/11 45/11
evidence [4] 4/3 10/3 15/5 37/24
evidentiary [3] 7/12 39/19 39/22
exact [1] 35/1
exactly [6] 23/22 29/15 29/20 34/12
34/23 40/19
example [1] 25/14

except [2] 13/18 36/5
excepting [1] 83/4
exchanged [1] 39/3
excuse [3] 14/7 20/14 45/6
excused [2] 27/25 45/3
exercised [1] 41/6
exist [2] 11/3 12/1
exists [3] 10/17 10/17 32/2
experience [1] 30/19
extensive [1] 31/5
extent [7] 15/11 23/15 24/5 33/6 34/21
38/21 42/16
extreme [1] 44/19

## F

face [1] 23/15
fact [13] 9/2 10/4 11/3 11/14 11/25
12/13 14/1 22/21 32/17 33/20 36/9
39/15 42/9
fairly [1] 20/2 20/3
fall [1] 15/17
false [1] 13/16
family [1] 26/5
far [2] 7/22 19/19
federal [4] 18/22 38/11 44/6 44/12
fee [2] 14/9 9/10 9/22 10/2 10/17 12/3
12/4 14/6 14/10 14/16 14/18 14/20 44/2
44/11
feeds [2] 5/8 16/25
fees [1] 12/4
felt [1] 25/1
ferret [1] 35/24
fighting [1] 26/24
file [2] 21/11 24/22
filed [6] 6/19 7/14 8/7 11/9 20/18 21/19
21/22 24/11 29/18 30/25 33/2 34/24
35/15 36/6
files [4] 18/9 25/1 25/10 25/17
filing [3] 8/18 15/25 20/1
find [7] 23/10 33/24 37/2 37/3 42/2
43/24 44/10
finds [1] 41/9
fine [3] 5/10 16/22 16/23
finer [1] 13/25
finished [1] 13/9
firm [3] 6/8 27/6 27/6
firms [7] 12/3 15/8 15/8 18/22 19/12
39/13 42/24
first [12] 8/24 13/8 14/12 15/24 19/18
22/24 24/20 33/10 36/24 42/4 43/16
44/5
five [1] 8/14
FL [6] 2/3 2/7 2/10 2/14 2/17 2/21
Flag [2] 5/23 5/24
flight [1] 7/3
FLORIDA [4] 1/1 1/8 44/5 46/7
focus [3] 18/4 22/12 24/9
following [1] 15/7 26/4
foreclosed [2] 40/25 41/8
foregoing [1] 46/2
forget [1] 19/4
former [5] 34/20 39/1 40/5 40/18 42/19
formerly [1] 41/11
formulated [1] 18/17
Fort [1] 44/8
forward [2] 18/2 35/16
found [2] 44/4 44/12
four [1] 38/17
frame [2] 13/4 17/21
frankly [2] 14/4 16/25
free [3] 28/5 31/23 35/19
frequency [1] 38/21
front [2] 5/9 13/23

**F**

FSO [1] 3/9
full [1] 11/6
fun [1] 39/18
further [1] 28/1

**G**

garbage [1] 26/4
GARCIA [4] 1/5 1/5 5/4 24/2
Garcias [6] 18/20 18/23 23/21 24/8 24/9
24/13
gentlemen [2] 42/9 42/23
germane [2] 14/3 42/1
get [8] 5/12 7/3 23/11 24/4 26/14 29/5
37/2 44/19
getting [2] 34/12 44/22
give [7] 19/8 26/11 36/3 36/4 37/3 37/10
43/25
given [3] 32/14 32/15 45/7
giving [2] 29/16 43/18
go [13] 5/12 8/5 12/19 13/13 17/12
17/20 24/19 25/1 25/3 34/1 37/2 38/16
44/17
goes [3] 11/9 12/15 23/12
going [12] 10/2 11/18 12/5 19/16 20/11
24/10 26/3 30/4 35/25 36/1 36/4 36/12
39/19 40/22
gone [1] 16/1
Google [1] 43/7
got [6] 6/17 6/21 14/24 17/21 27/2 35/23
Gotcha [1] 17/11
GrayRobinson [5] 5/19 9/19 9/23 10/5
10/8 10/11 10/13 12/21 39/13
great [1] 21/13
guess [1] 37/1
guide [1] 8/11

**H**

H.B.A [1] 40/15
had [19] 14/1 14/8 17/15 17/19 18/16
18/20 19/9 19/24 20/5 22/15 26/25 29/4
32/24 33/1 33/3 33/21 34/25 39/1 40/9
half [2] 17/4 17/4
handle [1] 40/20
handled [1] 12/10
happens [1] 41/10
hard [1] 36/22
has [47]
hasn't [1] 29/6
hat [1] 21/2
have [99]
haven't [4] 15/25 26/16 28/6 41/4
he [69]
he's [16] 9/6 12/10 17/22 20/18 30/17
31/24 32/20 32/20 33/25 35/15 35/20
35/21 41/2 41/24 43/17 43/18
headaches [1] 44/19
heads [1] 21/3
hear [2] 24/17 31/14
heard [2] 40/24 40/24
hearing [12] 1/15 6/17 7/11 7/12 10/18
23/1 27/1 28/9 39/19 39/22 45/5 45/7
heart [1] 42/3
helps [1] 13/3
here [28] 5/14 5/19 5/22 6/8 6/12 7/4
7/24 12/19 13/10 14/3 14/6 15/3 17/2
18/13 19/10 19/13 21/24 26/21 28/6
28/8 28/11 29/4 30/18 31/2 35/9 40/20
42/21 43/23
higher [1] 33/23
higher-up [1] 33/23
highlights [1] 19/9
highly [1] 11/4

him [25] 9/5 19/5 26/2 26/4 26/4 26/6
29/6 30/1 30/5 31/6 31/25 32/8 33/13
33/13 33/4 33/18 33/18 35/9 35/13 37/3
37/5 37/8 37/9 37/21 41/23
himself [1] 12/8
hire [2] 26/8 26/9
hired [4] 9/2 9/6 22/22 29/6
his [20] 11/18 14/22 15/6 16/5 18/4 19/5
21/7 21/20 26/4 26/5 29/20 30/18 33/20
33/22 34/6 35/5 37/6 37/6 41/25 43/17
history [2] 11/12 12/14
Holcomb [1] 18/18
hold [2] 8/16 16/17
holding [1] 44/2
home [3] 40/17 40/18 41/13
Honor [50]
Honor's [1] 32/3
HONORABLE [1] 1/16
host [1] 31/7
hours [1] 44/21
how [10] 10/1 12/4 18/16 19/11 31/19
31/20 37/9 41/8 41/9 43/10
Howard [3] 46/2 46/5 46/6
however [2] 7/13 24/13
huge [1] 23/4
hundred [1] 15/22
hundreds [3] 25/3 25/3 43/8
hunt [1] 14/23

**I**

I'd [1] 28/3
I'll [1] 44/20
I'm [25] 5/14 5/19 5/25 6/7 6/8 9/16 9/25
14/4 16/5 18/13 19/18 22/11 26/7 27/11
27/11 30/7 31/17 32/17 38/13 40/8
44/18 44/21 44/22 45/3 45/10
I've [5] 18/15 33/3 41/1 41/3 43/22
i.e [1] 30/11
IAS [2] 6/8 6/9
identical [1] 12/11
identified [4] 15/5 26/19 26/19 26/20
identify [3] 8/19 13/11 22/21
if [53]
ignored [1] 25/11
III [1] 1/16
imagine [1] 43/12
important [1] 38/23
importantly [1] 42/22
in [139]
included [2] 18/24 22/13
incorrect [1] 13/7
indicative [1] 12/5
indiscernible [6] 9/5 9/17 15/4 25/23
40/16 43/19
individual [2] 5/20 42/14
individuals [3] 15/7 21/25 22/15
information [40] 11/13 11/19 12/8 12/12
12/14 12/15 20/25 21/5 22/5 23/6 23/7
24/6 26/11 26/15 29/12 29/15 29/16
29/20 30/11 31/7 31/8 33/7 34/11 34/22
35/4 35/22 36/8 39/3 39/15 39/21 40/5
40/11 42/7 42/8 42/11 42/12 42/15
42/17 42/25 43/1
initial [1] 32/3
Initially [1] 6/19
initiated [1] 6/18
inner [1] 41/12
intend [1] 9/13
intensely [1] 29/21
intent [2] 24/3 24/12
interest [1] 37/6
interference [1] 36/23
interject [2] 13/9 18/8

Internet [4] 25/25 30/4 32/6 33/24
interrupt [1] 8/21
interview [2] 17/17 40/18
into [7] 5/10 14/5 18/21 25/9 26/18
31/24 44/19
intrusive [3] 10/21 14/18 26/14
invaded [1] 25/7
investigator [1] 26/13
involve [1] 17/21
involved [11] 20/11 21/15 21/23 22/1
27/5 27/11 27/12 29/21 29/22 30/20
35/2
involvement [4] 11/11 14/21 18/5 21/20
involving [3] 24/7 40/17 44/10
irrelevant [1] 9/14
is [167]
issue [8] 7/2 9/7 14/8 22/16 23/12 34/8
34/9 39/10
issues [4] 8/19 12/11 12/17 20/23
it [64]
it's [31] 8/1 10/21 10/21 10/21 10/23
14/23 14/24 17/3 21/12 22/18 24/12
26/19 33/25 35/19 36/11 36/22 36/25
37/11 37/12 39/6 40/17 41/15 42/18
42/22 42/23 43/3 44/6 44/8 44/9 44/11
44/12
item [1] 8/24
its [2] 20/19 23/14
itself [2] 27/12 33/5

**J**

January [2] 16/3 23/18
job [1] 13/17
John [1] 19/2
Johnson [40] 2/2 2/9 2/13 5/14 7/2 9/19
9/23 10/3 10/6 10/10 10/13 11/14 11/21
12/8 13/17 15/2 15/6 15/9 17/15 21/4
21/5 22/2 22/7 22/8 22/15 23/21 24/6
24/25 25/15 25/17 25/22 27/3 27/9
27/14 27/14 27/20 38/22 39/12 39/13
45/11
Johnson's [6] 9/1 11/11 12/6 13/19
14/21 20/24
Jones [3] 46/2 46/5 46/6
Jr [1] 2/9
judge [13] 1/17 7/1 7/16 13/23 15/17
16/18 17/5 18/8 19/1 20/2 27/25 28/9
38/11
jump [2] 12/19 17/18
jumping [1] 22/7
just [34] 5/9 7/9 7/24 8/6 8/13 8/14
13/16 14/14 14/23 14/23 14/24 16/2
16/8 16/12 18/6 18/19 18/22 28/25
28/12 31/1 36/11 36/25 37/7 37/8 37/11
37/18 38/16 39/4 39/17 41/15 43/6 43/7
43/9

**K**

Kemker [2] 2/20 6/8
Kennedy [1] 2/17
kind [3] 18/6 41/5 41/15
know [23] 10/18 13/1 16/4 21/7 23/22
23/25 26/12 26/23 30/8 30/18 30/22
33/9 33/12 33/12 33/15 36/1 36/4 37/6
37/8 37/9 38/10 41/10 41/12
knowledge [1] 21/13
knows [5] 26/2 30/20 32/5 41/2 41/16

**L**

last [2] 14/13 36/14
law [16] 6/8 12/3 15/8 15/8 18/22 19/12
25/7 32/18 34/19 38/24 38/25 39/6
39/12
lawsuit [4] 15/25 20/2 25/2 32/11

## L

lawyer [3]  25/22 33/4 33/18
lawyers [6]  14/15 25/10 28/23 33/7
33/11 33/21
least [4]  22/2 32/9 32/9 39/7
leave [6]  8/1 28/5 28/5 44/17 44/20
44/23
Leclainche [1]  2/2
left [3]  8/15 14/1 28/7
legal [2]  26/3 34/6
less [2]  26/14 44/21
let [17]  8/6 11/21 12/19 13/4 13/6 13/8
13/13 17/12 17/18 19/16 26/18 28/11
28/12 34/1 34/1 39/25 41/21
let's [8]  5/3 5/12 13/9 15/1 22/8 28/10
34/14 40/2
letters [2]  27/6 27/9
Leung [4]  18/18 18/18 19/6 19/7
lie [1]  38/10
life [1]  18/20
lightly [1]  25/6
like [4]  25/2 40/21 42/9 43/9
likely [1]  8/21
limit [3]  23/23 24/1 24/12
limitation [1]  28/15
limited [4]  20/2 20/3 32/25 33/13
litigants [2]  22/5 22/6
litigation [24]  11/11 11/12 11/12 11/13
11/17 11/19 12/6 18/5 21/1 21/14 21/19
21/19 21/20 22/1 22/19 29/21 30/13
30/16 34/11 35/14 42/1 42/11 42/17
44/11
little [2]  16/12 40/1
LLP [3]  2/9 2/13 2/16
lobbyists [2]  41/10 41/11
log [7]  7/7 7/18 15/10 15/13 15/24
19/1 19/10 20/18 22/25 24/22 25/1 25/5
36/4 39/9
long [2]  13/19 33/23
longer [1]  42/9
look [7]  10/10 25/9 30/24 33/24 34/24
36/5 40/15
looking [4]  9/16 20/20 40/16 44/22
loop [1]  26/19
lost [1]  43/17
lot [2]  25/13 25/15
Lueng [1]  19/6
LUIS [2]  1/5 5/4

## M

made [2]  11/7 17/23
magic [1]  16/3
MAGISTRATE [1]  1/17
main [1]  13/1
make [4]  7/23 8/2 8/14 31/2
making [1]  7/22
managing [1]  27/8
many [2]  29/22 29/22
MARIA [1]  1/5
Marie [3]  2/5 2/19 6/7
marks [1]  43/22
Marty [1]  20/6
massive [1]  31/9
material [1]  23/12
matter [8]  5/4 12/7 15/25 21/3 24/2 27/8
34/6 46/3
matters [6]  13/20 17/22 21/20 24/7 25/6
41/3
may [11]  15/2 15/2 27/25 30/20 31/1
31/11 39/23 40/7 40/9 40/11 40/12
maybe [2]  16/18 16/19
MCCOUN [1]  1/16

## N

McGovern [5]  2/5 2/6 6/3 8/6 8/18
me [37]  6/25 7/5 7/18 8/6 8/23 9/4
11/21 12/9 13/4 13/6 13/8 13/13 14/7
16/1 16/17 17/12 17/18 18/13 19/8
20/14 23/14 24/17 26/18 27/15 27/18
28/11 28/12 28/21 30/3 34/1 34/1 35/3
39/10 39/25 41/2 41/21 45/6
mean [5]  16/4 25/18 30/5 41/10 43/19
Medical [1]  44/9
Meet [1]  8/5
meets [1]  9/6
memorandum [1]  6/22
mentioned [2]  22/12 26/21
met [1]  41/4
Miami [1]  2/7
mic [2]  5/10 16/25
Michael [1]  2/16
microphone [1]  5/8
MIDDLE [4]  1/1 44/5 44/7 46/7
might [7]  7/1 7/17 15/16 16/12 18/8
40/10 45/2
Mike [3]  20/5 43/8 43/16
minutes [1]  23/1
Miscavige [1]  43/17
Miss [1]  8/17
missed [1]  6/15
mix [1]  29/4
moment [1]  5/2
money [1]  43/18
more [7]  4/2 25/13 25/21 31/5 38/13
42/21 45/12
Morgan [5]  18/17 18/18 19/2 19/3 19/3
most [2]  27/3 35/7
motion [21]  1/15 6/19 7/12 11/8 11/9
12/13 12/17 12/18 13/1 14/1 21/6 21/12
23/2 25/21 31/10 38/24 39/16 42/20
43/3 43/4 44/4
move [1]  15/1
Mr [116]
Ms [1]  8/6
much [4]  12/16 21/25 26/14 37/9
multiple [1]  15/8
my [19]  5/19 7/3 7/4 8/12 8/22 16/16
16/17 18/9 19/1 19/19 20/2 25/11 31/8
33/4 38/13 42/9 43/7 43/23 45/2
Myers [1]  2/8
myself [1]  40/1

## N

name [1]  19/5
names [1]  43/19
Nate [1]  6/11
Nathan [1]  2/16
nature [1]  19/13
near [1]  14/20
necessarily [2]  14/5 42/5
necessity [1]  13/18
need [13]  9/5 10/18 23/6 23/12 25/9
26/15 27/20 30/24 37/7 39/21 39/25
44/24 45/13
needs [2]  8/22 36/22
neither [1]  41/13
never [6]  24/23 24/23 26/1 26/6 33/3
33/10
New [3]  14/9 44/12 44/13
next [1]  14/1
no [43]  6/16 10/2 10/24 11/5 11/23 12/2
12/9 12/23 17/25 17/25 17/25 18/15
19/14 19/18 22/25 23/9 23/20 24/11
26/3 26/6 26/10 26/13 28/1 32/16 33/3
33/10 35/13 35/14 35/25 37/20 37/20
37/24 38/4 38/12 39/8 39/9 39/15 40/14
42/9 42/11 42/19 44/16 45/6

## No.

No.70 [1]  1/16
No.8:13 [1]  1/1
No.8:13-cv-220-T-27TBM [1]  1/7
none [2]  4/3 18/3
not [84]
notes [1]  43/23
nothing [5]  14/24 25/21 32/4 32/4 32/16
nothing's [1]  43/21
Notice [1]  11/22
notify [1]  44/24
now [9]  8/2 9/16 11/14 12/1 13/14 21/7
22/4 27/14 43/1
number [4]  5/5 14/3 15/2 36/24
numerous [2]  6/20 11/10
nursing [3]  40/17 40/18 41/13

## O

object [2]  9/2 29/14
objected [1]  35/6
objection [2]  32/7 41/7 41/23
obtain [3]  23/7 24/8 34/14
obtained [3]  34/11 34/15 42/25
obtaining [1]  33/4
obviously [6]  11/9 11/17 17/14 23/9
23/11 29/14
occupies [1]  35/10
occur [1]  22/17
October [1]  13/2
odd [1]  15/22
off [3]  5/8 16/25 17/1
offer [2]  9/4 43/23
offered [1]  37/1
offering [1]  37/7
office [2]  26/12 33/4
officer [3]  33/17 38/6 38/7
Official [1]  1/22 46/6
oh [4]  16/5 16/8 19/19 31/17
Okay [17]  5/7 5/17 7/21 7/25 8/20 10/15
10/25 11/24 12/24 13/15 13/22 15/1
15/19 20/22 24/14 38/2 43/22
on [49]
once [2]  11/4 34/10
one [20]  8/13 8/16 11/1 14/2 15/3 15/9
18/23 19/12 19/20 20/18 26/12 31/2
31/5 33/4 33/10 33/21 34/5 35/25 39/9
44/10
ones [1]  30/20
only [11]  9/4 9/14 10/3 27/4 27/23 29/4
29/7 31/24 32/4 32/25 36/7
open [1]  18/7
open-ended [1]  18/7
opinion [2]  24/23 25/11
opinions [1]  30/14
opportunity [1]  19/9
or [48]
order [2]  5/2 6/20
Organization [2]  5/23 5/24
organizations [1]  30/19
original [1]  24/21
Orlando [1]  44/7
Osborne [1]  2/2
other [23]  10/20 12/10 17/16 19/12
21/18 21/21 21/22 22/10 23/9 23/10
24/7 24/7 24/7 25/2 25/19 25/22 27/4
31/7 33/3 34/6 35/2 39/10 44/8
others [1]  36/6
otherwise [2]  38/3 38/9
our [37]  8/11 8/18 9/3 9/12 9/13 10/22
10/22 10/23 11/7 12/12 12/18 14/18
16/6 18/4 20/24 23/2 24/4 24/12 24/21
24/23 25/1 25/5 25/7 27/1 27/6 27/8
29/25 30/13 30/14 30/15 31/19 37/2
38/24 39/16 39/20 39/20 44/3

## O

out [16] 16/6 23/10 28/12 29/3 30/7
32/14 32/15 35/9 35/24 37/3 39/17 41/9
41/18 43/22 44/6 44/7 44/8 44/11
outcome [1] 37/6
outlines [1] 8/8
outset [1] 8/6
outside [1] 15/18
over [10] 19/9 25/25 25/25 25/25 32/6
32/7 32/7 41/6 41/6 43/18
overbroad [2] 23/15 24/12
own [1] 20/19

## P

P.A [1] 2/6
p.m [3] 1/9 1/9 45/17
PA [1] 2/2
page [2] 14/12 14/13
pages [2] 15/22 25/4
paid [2] 37/8 37/9
painful [1] 17/3
Palm [1] 2/3
paper [1] 40/16
papers [1] 31/9
Paragraph [1] 23/2
Pardon [2] 28/21 30/3
parent [1] 10/14
Parkus [1] 44/9
participate [1] 35/20
participated [1] 35/14
particular [1] 22/14
Parties [1] 8/8
party [7] 8/25 9/1 23/6 28/13 31/19
31/19 43/13
past [4] 11/11 12/14 16/13 41/24
payment [1] 36/15
pending [2] 21/22 29/19
people [7] 18/2 22/13 24/7 26/9 26/12
41/11 43/18
perhaps [1] 35/18
person [1] 41/20
perspective [1] 20/24
pertain [1] 24/5
Petersburg [1] 2/21
ph [2] 19/2 19/6
phone [3] 5/25 6/2 6/14
picked [3] 16/8 16/12 18/5
plaintiff [6] 2/4 2/8 17/16 17/16 25/23
40/17
plaintiffs [19] 1/6 6/19 6/23 9/2 9/18 9/20
11/15 11/20 12/16 15/9 20/11 20/13
20/16 20/25 22/22 29/17 35/12 36/17
44/15
plaintiffs' [7] 11/16 20/25 21/1 21/6
34/10 37/18 42/24
plan [1] 8/12
play [5] 11/13 11/19 34/11 42/11 42/17
players [3] 17/17 42/14 42/14
pleading [1] 8/7
please [1] 5/3
podium [1] 5/11
point [9] 15/1 18/23 24/9 27/16 28/5
31/2 37/22 37/25 39/17
points [2] 13/25 41/18
Pope [9] 2/9 2/9 2/13 5/25 6/3 27/7 31/1
34/4 41/18
position [3] 33/20 35/10 35/12
positions [2] 40/5 40/6
possess [1] 40/4
possession [3] 18/10 27/4 40/10
possible [1] 10/3 10/24
potential [5] 20/1 20/10 20/11 21/4 22/5

Potter [7] 2/12 5/22 7/15 27/1 27/7
27/13 45/3
Potter's [2] 27/6 40/2
practices [2] 30/21 43/10
precisely [1] 23/22
preparation [1] 20/1
prepared [1] 15/23
present [2] 2/23 45/8
president [1] 43/20
presumption [2] 39/2 39/7
prevent [1] 31/20
prevents [5] 11/5 12/2 30/1 30/5 32/16
previously [2] 18/19 32/15
prior [3] 16/9 24/15 32/18
private [1] 26/5
privilege [45] 7/16 7/18 9/9 11/5 12/2
14/5 15/13 15/18 15/19 15/24 19/1
19/10 19/10 19/11 19/13 19/20 19/21
19/22 20/15 20/18 22/25 23/3 23/5 23/8
24/22 25/1 25/9 26/7 28/18 28/20 28/22
30/11 30/12 32/16 33/13 33/16 36/4
36/21 39/8 39/9 40/7 40/23 41/5 42/13
42/18
privileged [17] 9/14 15/10 20/4 20/25
21/5 24/6 25/5 29/15 30/10 33/8 34/22
35/3 39/15 41/13 42/13 42/18 44/3
probably [4] 12/3 13/17 37/16 43/8
problem [1] 10/14
proceedings [5] 1/21 5/8 16/24 45/17
46/2
produce [3] 7/14 15/12 30/18
product [6] 20/15 22/19 22/24 23/5
25/12 26/17
production [5] 6/21 23/24 23/25 34/6
45/7
professes [2] 21/13 21/15
professing [3] 21/20 36/7 36/8
prohibits [1] 31/6
proof [5] 12/1 36/12 38/4 39/20 39/20
property [1] 13/21
proposed [1] 18/16
proprietary [1] 40/11
protect [3] 42/8 42/10 42/21
protected [1] 42/12
Protective [1] 6/20
protest [2] 34/6 41/20
prove [2] 9/5 24/23
proven [1] 24/3
provide [4] 7/17 15/10 20/12 36/20
provided [4] 12/12 15/13 15/15 22/25
provides [1] 43/19
providing [2] 12/15 33/14
pulled [1] 43/7
purely [1] 28/25
purports [1] 26/13
purpose [1] 18/4
purposes [2] 10/18 39/21
pursuant [1] 45/2
put [8] 16/17 21/2 22/7 22/10 31/10 32/6
37/18 39/19

## Q

Quaranta [4] 2/6 9/20 9/24 39/13
question [15] 11/17 12/9 14/4 28/18
29/11 30/24 32/3 35/5 35/14 40/25
42/11 42/19 42/22 42/23 43/22
questions [4] 8/21 15/2 25/15 30/10

## R

raised [1] 12/11
raises [1] 11/17
Rathbun [27] 15/7 19/12 20/6 20/8 21/2
21/18 22/12 28/10 28/13 28/24 29/3

29/3 29/5 29/10 32/23 32/25 35/1 35/8
36/6 36/16 37/18 38/11 38/23 40/4 42/6
42/16 43/4
rather [2] 31/5 39/20
Rd [1] 2/3
read [3] 18/12 18/15 36/22
really [5] 12/7 14/14 14/17 20/20 29/7
reason [9] 10/24 24/11 27/4 29/18 38/18
38/23 39/6 40/5 41/23
rebuttable [1] 39/2
received [7] 4/3 27/5 27/6 36/18 37/4
37/19 37/20
recollection [2] 16/16 31/8
recommend [1] 13/10
record [10] 5/15 5/20 11/16 13/10 16/24
21/12 28/4 29/6 37/18 46/2
recorded [1] 1/21
recording [1] 5/7
records [6] 38/18 38/19 39/5 39/8 39/12
39/14
recuse [1] 9/5
recused [2] 25/22 25/23
reference [2] 10/5 10/6
references [1] 34/4
regard [1] 37/17
regarding [2] 6/20 19/25
regards [1] 6/18
relate [2] 36/14 36/15
related [3] 13/19 18/9 24/1
relates [2] 8/25 14/14
relating [1] 31/9
relation [3] 9/9 19/11 22/19
relationship [4] 9/12 10/22 16/13 28/24
relative [1] 13/21
relentlessly [1] 26/4
relevance [6] 9/3 9/4 10/2 12/1 13/4
14/19
relevant [9] 11/4 11/5 12/16 21/6 22/15
37/5 38/20 39/6 39/16
RELIGIOUS [3] 1/10 5/5 6/12
reluctantly [1] 35/18
rely [1] 7/23
remain [2] 5/9 33/8
remarkable [1] 43/19
remedies [1] 31/22
remember [2] 25/17 37/15
remuneration [1] 14/22 36/16
reply [1] 12/25
report [3] 8/7 9/17 26/21
Reporter [3] 1/22 3/2 46/6
represent [2] 8/25 11/15
representation [5] 13/19 14/2 37/23
38/15 42/5
represented [2] 18/20 38/8
representing [7] 18/22 20/13 20/16
25/10 29/13 32/10 35/12
request [2] 15/11 17/12
requesting [3] 17/22 18/1 18/1
requests [2] 6/20 8/24
require [1] 23/24
reserving [1] 36/22
respect [3] 14/10 26/1 38/13
Respectfully [1] 23/20
respond [7] 15/9 15/16 19/17 27/9 31/11
39/23 40/2
response [9] 6/16 6/21 7/15 19/14 19/19
24/21 37/19 40/24 44/22
responsive [3] 15/11 15/23 27/24
restricted [1] 20/7
retained [3] 19/23 32/20 32/21
retainer [5] 9/9 9/19 10/16 14/5 37/13
reveal [1] 34/22

## R

revealing [4] 25/16 29/20 31/6 36/13
review [3] 7/20 27/8 44/19
Richard [2] 2/23 5/18
right [23] 5/21 6/10 6/14 8/20 9/21 10/7
13/13 17/3 17/11 18/25 22/9 24/16
27/22 31/23 32/18 35/17 37/17 37/17
38/5 41/6 41/6 44/1 45/15
Rinder [43] 15/7 19/12 19/22 20/5 20/8
20/9 20/12 21/2 21/7 22/12 26/1 26/7
28/10 28/13 28/24 29/8 29/10 29/16
31/4 31/18 31/23 32/5 32/12 33/6 33/11
33/16 33/18 34/8 34/13 34/16 34/23
36/6 36/16 36/17 37/16 38/22 40/3
40/25 42/6 42/16 43/4 43/8 43/15
Rinder's [2] 25/24 43/16
Robert [2] 2/12 5/22 12/6 15/6
ROCIO [1] 1/5
role [4] 11/18 12/6 20/2 21/18
RPR [1] 46/6
rule [1] 41/1
Rules [2] 44/6 44/12
run [1] 43/22
Ruppel [2] 2/9 2/13

## S

said [5] 21/24 27/13 33/22 33/24 33/25
same [5] 21/18 27/19 35/1 40/19 45/13
say [10] 13/18 14/20 17/21 23/16 29/14
32/9 32/23 34/15 34/20 36/17
saying [6] 21/23 26/9 30/2 32/5 38/9
41/2
says [10] 8/9 32/18 34/19 35/2 35/9
37/19 37/21 38/25 39/6 43/17
SAZ [2] 1/5 5/4
scheduled [1] 6/17
scheduling [1] 7/2
SCIENTOLOGY [6] 1/10 5/5 5/23 5/24
6/12 41/14
seated [1] 5/9
second [4] 8/16 10/1 17/12 23/4
secrets [1] 32/14
see [11] 8/5 10/3 10/24 13/18 14/19
17/3 24/24 36/2 36/7 36/18 37/7
seek [2] 17/18 30/10
seeking [4] 23/6 32/1 42/8 43/1
seeks [3] 21/16 29/11 42/16
seems [1] 14/18
send [1] 16/10
sense [2] 14/22 26/10
September [1] 1/8
serve [1] 8/22
served [2] 7/15 27/15
serves [1] 21/18
Service [2] 5/23 5/24
set [1] 39/19
setting [1] 35/23
several [1] 33/15
shareholder [1] 27/8
sharing [5] 14/16 14/18 14/20 22/1 22/4
she [2] 8/7 8/9
shield [1] 23/8
Ship [1] 5/24
should [7] 7/19 22/16 25/10 29/3 30/8
35/9 39/14
shouldn't [5] 23/23 24/1 28/12 42/2
43/18
show [4] 12/15 14/12 37/6 41/5
showing [2] 11/7 39/1
shown [1] 25/13
shows [3] 12/13 14/12 14/13
sign [1] 33/1

signature [1] 14/13
signed [3] 10/13 11/4 31/4
similar [1] 14/8
simply [4] 18/5 25/8 30/18 42/19
since [4] 16/11 23/16 27/13 27/14
sir [1] 13/8
sites [1] 43/8
Sitting [1] 17/2
situations [1] 23/3
six [2] 8/8 36/25
small [1] 31/2
so [34] 7/4 9/6 10/9 10/15 11/4 11/13
11/25 13/13 15/19 16/12 16/25 18/6
18/10 20/18 21/12 21/25 22/14 24/11
25/20 26/15 26/23 27/11 27/23 28/5
29/7 32/9 34/18 36/4 36/11 39/4 40/14
42/10 42/18 43/11
so-called [1] 11/13 42/10 43/11
Solvent [1] 4/7
some [10] 15/22 22/2 23/21 23/25 24/10
25/16 26/23 34/5 40/22 44/2
somehow [1] 31/21
someone [1] 38/9
something [1] 37/25
somewhat [1] 12/5
somewhere [2] 16/20 31/9
sorry [3] 16/6 22/11 31/17
sort [6] 8/11 9/8 9/9 31/9 31/7 40/22 44/22
sorts [2] 23/3 31/7
sought [2] 26/6 40/18 42/25
Spaeder [2] 2/16 6/12
speak [2] 5/10 13/11
speaking [1] 26/2
speaks [1] 33/5
specifically [7] 12/17 22/5 22/13 23/5
32/18 38/17 39/11
specified [1] 18/2
speculating [1] 36/11
speech [1] 31/24
split [2] 10/2 12/5
splitting [1] 12/4
spoke [3] 8/2 27/13 33/4
spoken [5] 19/5 33/3 33/10 33/10 41/1
St [2] 2/10 2/13 2/21
stage [1] 16/2
stand [1] 20/19
standing [1] 17/4
start [2] 25/16 26/9
state [5] 5/12 18/21 21/10 29/19 44/13
statements [1] 41/25
STATES [3] 1/1 1/17 46/7
stay [1] 7/25
steps [1] 42/1
still [2] 26/24 44/18
stipulate [2] 9/18 36/17
stipulated [1] 9/1
stipulation [2] 10/16 18/16
stipulations [1] 18/12
stop [4] 26/2 26/6 32/8 43/21
stopping [1] 31/25
strategies [5] 11/13 21/14 22/1 22/3
30/13
strategy [1] 43/11
strictly [1] 24/1
structure [1] 30/8
styles [1] 8/7
subject [6] 34/8 34/9 34/20 34/21 42/23
43/5
subpoena [13] 16/6 16/10 17/22 18/7
18/24 23/15 24/4 24/9 27/15 27/20 45/4
45/6 45/13
subpoenaed [10] 5/15 5/20 7/6 7/7 7/11
7/11 7/13 26/22 27/14 28/5

subpoenas [1] 22/14
pubs [1] 27/25
substance [3] 21/16 23/10 27/12
substantial [5] 11/7 14/22 23/6 23/12
39/1
such [6] 10/6 10/17 29/12 29/13 29/13
38/10 40/7 41/22
such-and-such [1] 29/13
suddenly [2] 32/10 32/13
Suffice [1] 14/20
sufficient [1] 36/19
suggest [4] 13/4 13/6 13/8 14/6
suggesting [3] 10/9 10/16 18/12
suggestion [1] 18/15
Suite [4] 2/3 2/6 2/17 2/20
support [1] 23/2
supported [1] 11/10
suppose [2] 37/4 40/3
sure [3] 5/25 8/24 9/25
suspect [3] 34/12 38/3 38/9
sustained [1] 35/7
system [4] 18/21 18/22 21/11 29/20

## T

table [2] 12/20 19/9
tactics [5] 11/12 21/14 22/2 22/3 30/13
tad [1] 38/16
take [8] 8/13 23/14 27/10 28/13 28/16
29/3 35/9 38/9
taken [1] 26/3
taking [1] 42/1
talk [3] 11/10 22/8 28/10
talked [2] 41/3 43/9
talking [4] 29/7 40/8 40/19 41/3
talks [1] 34/25
TAMPA [4] 1/2 1/8 2/17 46/8
tangentially [1] 27/11
team [1] 21/6
technical [1] 20/15
Ted [7] 6/4 14/8 20/14 24/18 31/11
39/23 43/6
tell [4] 20/20 33/17 35/6 37/9
telling [2] 14/17 41/16
tend [1] 7/24
test [2] 39/20 39/20
testify [1] 35/17
than [8] 10/21 13/17 23/10 25/21 26/10
38/14 39/10 44/21
thank [8] 6/1 6/2 17/14 20/22 28/9 44/14
45/15 45/16
that [287]
that's [30] 5/10 6/5 6/6 8/4 9/21 10/7
10/20 11/8 12/6 13/1 14/9 16/22 16/22
18/23 20/21 24/3 29/2 31/10 33/2 33/5
33/22 34/12 34/22 36/2 36/25 40/16
41/13 41/17 42/21 44/13
their [52] 5/12 11/5 11/12 11/12 11/20
12/1 12/2 12/16 17/24 21/3 24/15 28/17
30/21 37/23 40/5 40/5 40/7 41/17 42/19
43/1 43/10 43/11 43/20
them [21] 11/15 11/17 19/23 21/8 21/9
21/9 22/4 26/10 26/14 27/21 27/22
29/23 31/25 32/12 36/20 37/3 37/10
41/19 43/14 44/20 44/23
themselves [5] 11/3 11/4 12/1 23/11
39/14
then [14] 6/21 7/14 7/15 9/22 11/5 15/7
16/24 17/13 23/23 31/21 35/23 39/2
44/10 44/20
Theodore [1] 2/2
there [51]
there's [13] 10/12 14/16 15/8 18/15 26/6
26/13 27/25 32/14 32/16 35/25 35/25

## T

there's... [2] 42/17 43/8
therefore [1] 25/9
these [11] 11/25 16/24 18/9 20/13 21/25 28/7 29/23 33/21 35/2 35/25 42/9
they [59]
they'll [1] 37/3
they're [8] 18/23 22/23 30/12 30/13 30/15 34/21 36/8 40/19
they've [1] 26/1
thing [4] 35/1 40/19 41/22 43/16
things [5] 25/15 35/24 40/8 40/20 40/21 41/9
think [25] 6/24 9/6 9/11 13/25 14/23 16/9 16/18 20/14 20/18 21/2 24/3 25/11 25/20 26/15 26/16 29/3 29/7 29/16 29/18 30/23 32/12 34/7 35/7 35/11 36/25
this [113]
THOMAS [1] 1/16
those [26] 7/20 14/10 15/12 18/1 18/19 18/22 21/17 22/3 22/13 22/15 22/21 23/3 24/4 27/9 28/17 30/10 35/24 36/1 36/13 38/18 39/5 39/8 39/14 42/20 42/22 44/3
though [1] 14/3
thought [1] 16/11
thousands [3] 25/4 25/4 32/15
three [5] 12/3 15/22 22/4 38/17 39/12
through [6] 15/25 24/8 25/1 25/3 26/4 37/2
throw [1] 28/12
tied [1] 14/5
time [16] 8/13 13/19 16/9 17/21 23/22 24/10 33/23 37/1 37/6 37/25 38/18 38/19 39/5 39/12 41/10 44/18
times [1] 32/15
today [6] 6/17 7/3 7/16 8/19 15/16 27/1 41/2
told [6] 13/16 27/18 33/18 35/3 38/14 41/2
Tomassi [2] 2/19 6/7
too [1] 37/10
trading [1] 12/14
transcribed [1] 1/21
transcript [2] 1/15 46/2
transcription [1] 1/22
transfers [1] 13/21
Trenam [2] 2/20 6/7
trial [2] 21/8 44/11
tried [1] 26/2
TRUST [4] 1/10 5/5 6/9 6/13
try [3] 8/19 26/6 32/8
trying [7] 22/11 24/4 24/8 24/9 29/24 42/10 42/21
Tucker [1] 19/2
turning [1] 43/18
twice [1] 45/14
two [8] 15/2 18/2 22/10 22/21 36/14 38/17 42/9 44/4
twofold [1] 22/23
type [2] 29/16 40/13

## U

U.S [1] 6/9
Um [1] 37/15
umbrage [1] 38/9
undecided [1] 44/18
under [2] 41/23 43/7
understand [7] 9/3 26/21 27/18 29/1 41/7 45/1 45/8
UNITED [3] 1/1 1/17 46/7
Universal [1] 44/7

unnecessary [4] 10/21 14/19 14/23 27/16
unprivileged [1] 15/12
until [3] 7/4 13/9 23/1
unusual [1] 32/9
up [7] 8/2 15/3 28/2 33/23 37/25 39/25 43/7
upcoming [1] 10/18
us [15] 10/23 13/1 20/17 20/17 25/5 26/11 29/6 34/6 31/21 36/3 36/4 36/11 37/2 39/7 41/16
use [3] 37/5 40/21 43/1
using [2] 1/22 25/20
utilize [1] 31/23

## V

vacation [1] 44/22
vastly [1] 18/7
Vernon [2] 2/12
very [8] 12/16 12/16 17/17 21/25 23/12 27/11 32/24 39/15
viewed [1] 40/11
views [1] 41/25
virtually [1] 12/11

## W

wade [1] 44/19
wait [1] 13/9
waiting [1] 7/4
waived [3] 22/25 26/16 41/22
waiver [5] 23/2 24/20 25/12 42/3 43/12
Wallace [1] 2/9
Wally [1] 31/1
want [14] 5/10 8/13 8/14 10/25 13/10 16/5 16/10 23/15 24/17 26/8 37/1 37/2 37/9 37/11
wanted [4] 31/10 39/4 39/10 39/17
wants [2] 6/22 35/20
was [49]
waste [1] 36/25
way [15] 8/21 8/22 8/22 21/4 23/9 29/24 31/25 32/1 32/6 35/26 36/1 40/20 41/16 43/11 43/17
ways [2] 26/14 26/14
we [107]
we'll [5] 37/9 37/10 37/25 44/23 44/24
we're [16] 5/7 10/1 13/3 13/3 22/7 24/8 29/7 29/9 35/23 36/2 39/17 39/19 41/3 42/8 42/10 43/13
we've [8] 6/21 9/6 23/1 32/24 33/1 33/10 35/23 37/19
weigh [1] 10/25
Weil [4] 2/6 9/20 9/23 39/13
welcome [2] 7/25 8/1
well [24] 5/11 7/10 7/25 8/16 13/24 15/8 17/12 20/4 22/11 22/20 23/23 24/3 28/14 30/9 30/23 32/20 33/9 35/11 36/24 39/12 40/4 41/4 42/1 42/4
were [11] 7/10 7/11 13/1 18/22 20/11 27/7 29/24 37/7 38/10 42/14 44/10
weren't [1] 28/4
West [1] 2/3
what [49]
what's [5] 16/3 19/13 19/15 36/1 36/4
whatever [8] 26/2 27/15 30/22 31/24 32/1 32/5 37/11 41/16
whatsoever [2] 39/15 41/4
when [10] 16/15 17/7 17/19 17/23 21/10 23/22 29/19 35/24 36/5 41/8
Whenever [1] 16/21
where [2] 8/5 43/8
whether [13] 14/4 20/21 22/16 28/6 33/12 33/14 33/15 34/8 34/9 42/22

42/24 43/3 43/4
which [31] 7/14 7/8/9 9/4 9/17 14/10 14/12 14/13 14/14 15/15 17/21 18/3 21/1 25/4 25/17 25/21 25/24 26/10 29/5 30/11 31/6 32/6 34/4 36/15 40/15 40/17 40/20 41/19 41/24 43/17 44/4
whichever [1] 8/22 30/20
while [2] 38/19 39/14
Whittemore [1] 13/23
who [5] 6/22 7/6 8/2 19/23 20/12
whole [2] 12/7 31/7
why [11] 8/5 18/23 27/4 28/12 29/23 30/8 34/18 36/2 40/24 40/25 41/21
wife [1] 7/4
will [7] 7/4 7/23 8/21 13/22 20/19 23/25 24/23 28/8 36/20 41/25 44/24
willingness [1] 36/9
wish [5] 5/9 8/21 8/23 32/13 36/18
wishes [1] 35/16
witch [1] 14/23
within [1] 14/9
without [6] 20/20 28/15 32/7 32/7 41/7 42/1
witness [3] 35/17 37/5 37/14
WL [1] 44/9
won't [2] 36/3 36/3
work [9] 8/10 20/12 20/15 22/19 22/24 23/5 24/25 25/12 26/17
worked [2] 8/17 32/12
working [3] 20/17 21/9 23/21
workings [1] 41/12
world [1] 41/25
Worthington [1] 2/3
would [52]
wouldn't [1] 41/21
written [2] 19/4 25/18
wrong [2] 32/4 32/5

## Y

yeah [5] 5/25 16/7 19/7 23/18 45/10
years [13] 12/10 14/3 17/6 17/8 17/9 17/20 25/23 29/22 32/11 32/11 32/12 32/12 33/25
years' [1] 30/19
yes [14] 8/17 9/11 11/2 15/15 17/2 17/10 24/3 31/13 31/14 31/16 34/7 34/17 37/23 45/10
yet [1] 44/23
York [3] 14/9 44/12 44/13
you [90]
you're [11] 7/25 8/1 10/16 16/25 19/20 26/19 28/4 28/5 28/23 34/15 40/16
you've [3] 17/21 19/9 26/20
your [61]
yourself [1] 13/11

## Z

Zabak [8] 2/23 5/18 17/5 26/18 27/18 28/8 28/8 44/17
Zuckerman [2] 2/16 6/11