UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS A. GARCIA SAZ and Wife,
MARIA DEL ROCIO BURGOS
GARCIA,

        Plaintiffs,

                                CASE NO:  8:13-CV-220-T27 TBM

vs.

CHRUCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC., and
CHURCH OF SCIENTOLOGY FLAG
SHIP SERVICE ORGANIZATION, INC.,

        Defendants.
_____/

**PLAINTIFF'S MOTION TO LIFT STAY BECAUSE DEFENDANTS
WAIVED THE RIGHT TO ARBITRATE**

COMES NOW the Plaintiff, LUIS A. GARCIA SAZ and MARIA DEL ROCIO

BURGOS GARCIA, by and through their undersigned attorneys and moves this Court

for an Order lifting the stay pending arbitration.   Defendants waived arbitration by

thwarting the procedures for appointing arbitrators set forth in the arbitration agreement.

As grounds, Plaintiffs show as follows:

1.   On March 13, 2015, this Court entered an Order [DE 189] granting

Defendants' renewed Motion to Compel Arbitration and stayed this matter pending

arbitration.  This Court has jurisdiction to lift the stay because, in the ensuing 6 months,

the Defendants waived the right to enforce arbitration by deliberately thwarting the

procedures in the arbitration agreement for the appointment of arbitrators. *See Adam Techs. Int'l S.A. v. Sutherland Global Servs.*, 729 F.3d 443, 449 (5th Cir. 2013) ("[A]ncillary jurisdiction existed to allow the district court later to evaluate whether the dismissal that allowed the dispute to be taken to arbitration was being thwarted.").

2. On August 18, 2015, Plaintiffs requested by email arbitration pursuant to this Court's Order. Attached as Exhibit "A" is an email to the International Chief Justice dated August 18, 2015, requesting arbitration. In that email, Plaintiff designated their choice of arbitrator, Mr. Garth Lombard.

3. In response, Plaintiffs received from the International Justice Chief a response dated August 24, 2015, attached hereto as Exhibit "B," requiring Plaintiffs to identify their claims and state the facts upon which their claims are based. As the Court found in its Order entered march 13, 2015, there are "numerous irreconcilable inconsistencies" in the Church's arbitration procedures and rules, but found them "minimally sufficient." [DE 189 at 13 – 15]. No rules apply to this arbitration. There is no requirement that Plaintiffs state the nature of their claims. The response of the Justice Chief also stated that Mr. Lombard was not a Scientologist in "good standing." The Justice Chief proposed to send a list of what he considered to be qualified arbitrators in the greater Los Angeles area or invited the Plaintiffs to send a list of potential arbitrators so that he could determine who was qualified.

4. In response thereto, Plaintiffs responded with an email dated August 27, 2015, which is attached hereto as Exhibit "C," in which they delineated their claims and rejected the Defendants' offer to provide a list of church preselected "qualified arbitrators" and instead asked for a list of all Scientologists who were "in good standing"

since that was the requirement of the arbitration agreement. It is completely unreasonable to allow the Defendants to choose a list of people from whom Plaintiffs would be required to choose an arbitrator as a pre-selected list from the Defendants completely takes away Plaintiffs' ability to choose any arbitrator of their choice who is a Scientologist in good standing. In addition, there was no limitation in the agreement to only arbitrators in the Los Angeles area and Plaintiffs, therefore, requested a list of all Scientologists in good standing. Plaintiffs then offered the name of Chrissie Pearlman Weightman as a choice of arbitrator.

5. Defendants responded with an email dated September 4, 2015, referring to contact that Mr. Garcia had had with several Scientologists asking if they would serve as arbitrators for Mr. Garcia and his wife. The September 4, 2015, email, which is attached hereto as Exhibit "D" reminded Mr. Garcia that he is not permitted to talk to any Scientologist other than the Justice Chief. The email informed Mr. Garcia that two Scientologists, Laura Quintero and Paul Bove, had reported Mr. Garcia's "inappropriate" contact to the Justice Chief and said that they could serve as arbitrators. This is an impossible, arbitrary and unfair position for Plaintiffs – they must select a "scientologist in good standing" but are not allowed to communicate with a scientologist in good standing and apparently any scientologist who comes in contact with the Garcia's feels the need to "report" them to the International Justice Chief and thus it is impossible for the Garcias to select any arbitrator that is not biased towards the church. Furthermore, the Defendants, in that email, refused to provide a list of Scientologists in good standing insisting that Plaintiffs "know" who is in good standing and who is not. In fact, that is incorrect, as is shown by the Affidavit of Luis Garcia attached hereto as Exhibit "E."

3

Mr. and Mrs. Garcia resigned from the Church in 2010, six years ago, and have no idea who is or is not in good standing. The fact that Defendants are insisting on their definition of "good standing" illustrates the difficulty for Plaintiffs of participating in an arbitration process where there are literally no rules governing that arbitration. The very limited procedure set forth in the agreement is that each party can choose one arbitrator and those two arbitrators choose the third arbitrator. Who decides who is "in good standing" and who is not? There are no rules giving the parties the definition of that phrase. Defendants are insisting they alone get to make that decision. The Defendants refuse to make it easily known who is and who is not in good standing, and instead arbitrarily determine that anyone the Garcias choose is NOT in good standing, as will be shown by the course of events detailed in this motion.

6. Defendants rejected the arbitrator Plaintiffs' proposed, Ms. Chrissie Pearl Weightman (Exhibit "F"), because she had posted on an anti-Scientology blog in 2010.

7. While there was an offer by the church to have Ms. Quantero and Mr. Bove, who had reported Mr. Garcia to the Justice Chief to serve as arbitrators, Mr. and Mrs. Garcia never chose them to be arbitrators. Plaintiffs had simply tried to contact them to see if they would speak to them. The fact that Ms. Quintero and Mr. Bove would not speak to Plaintiffs and, instead, reported Mr. Garcia to Defendants for improperly contacting them, demonstrates that Plaintiffs did not select Ms. Quintero and Mr. Bove as arbitrators.

8. In fact, as can be seen by the attached Affidavit, Mr. Garcia did send out an email to 20 individuals that he had contact information for in order to find out if they would at least speak to him about serving as an arbitrator. Attached as Exhibit "G" are

4

the emails to those individuals, simply asking whether they would take Mr. Garcia's call. He knew that these 20 individuals were in good standing in the Church in November of 2010, when he left the Church. He had to send two emails to each one asking if they would take a call from him. Two reported him to the International Justice Chief and the third wrote a derogatory response. The remaining 17 never even responded.

9. On September 15, 2015, Mr. Garcia again wrote to the International Justice Chief asking for a list of Scientologists in good standing from whom he could chose an arbitrator. That email is attached hereto as Exhibit "H."

10. On September 18, 2015, a letter was sent by the International Justice Chief which is attached hereto as Exhibit "I," chastising Mr. Garcia for contacting any Scientologists since he is a suppressive person under Scientology rules and again refusing to provide a list of Scientologists in good standing.

11. On September 23, 2015, as can be seen from the email attached hereto as Exhibit "J," the Garcias selected Timothy DeWall to serve as an arbitrator.

12. On October 5, 2015, the International Justice Chief again replied, as can be seen by the letter attached hereto as Exhibit "K," rejecting Timothy DeWall as not being a Scientologist in good standing because Mr. DeWall had associated with Mike Rinder, a suppressive person.

13. On October 9, 2015, Mr. and Mrs. Garcia wrote an email to the International Justice Chief, attached as Exhibit "L," explaining that they were only guessing as to who was in good standing and provided a list of 35 individuals, any one of when would be satisfactory as their designated arbitrator.

14. On October 21, 2015, the International Justice Chief again responded, stating

that he would not even go through the entire list because he found on that list persons he did not consider in good standing with the Church. The email and correspondence is attached hereto as Exhibit "M." As examples, he stated that Joy Graysen was expelled in 2011 since she had resigned. He stated Katrina James was expelled in 2010, and that it would be a waste of time for him to go through the rest of the list. He did indicate that Ray Barton was qualified, but that he was 90 years old and might not be able to serve.

15. In response to the email of October 21, 2015, Mr. and Mrs. Garcia sent an email dated October 22, which is attached hereto as Exhibit "N," in which they explained that they were in good faith in trying to select someone who was qualified, but were finding it difficult since apparently only the International Justice Chief was qualified to adjudicate who was in good standing and who was not. Plaintiffs pointed out that because the Church rarely informs parishioners when they are labeled suppressive and, therefore, according to the International Justice Chief no longer in good standing, Plaintiffs were simply not in a position to know who was and was not in good standing.

16. On November 4, 2015, the International Justice Chief again replied, stating that Ray Burton was not available to attend arbitration and rejected a good portion of the list of 35 people who had been previously named. His response is attached hereto as Exhibit "O." In that response, the International Justice Chief again indicated that he had not gone through the complete list.

17. The Plaintiffs responded on November 5, 2015. That response is attached hereto as Exhibit "P," asking for a review of the remaining 35 names.

18. On November 30, 2015, the Defendants rejected more names on the list of 35

Individuals, rejecting David DeMichele because he had publically attacked the Church and its scripture and Mike Reppen because he had made derogatory comments about the Church. The International Justice Chief indicated that disqualified them as being in good standing. He did, however, indicated that Jasmine Buchele might be in good standing and said that he would get back. Attached as Exhibit "Q" is the email and correspondence from the International Chief Justice.

19. On December 11, 2015, Mr. and Mrs. Garcia against communicated with the Church through an email of that date. That communication is attached hereto as Exhibit "R" and Plaintiffs named seven additional individuals who might be in good standing.

20. On January 12, 2016, the Plaintiffs wrote again since they had not heard from the International Justice Chief for over a month. That request is attached hereto as Exhibit "S."

21. On January 18, 2016, still having not heard from the International Justice Chief, the Garcias sent an email asking for an acknowledgment of the prior emails. That email is attached here as Exhibit "T."

22. On January 19, 2016, the Garcias sent the same request by certified mail return receipt requested. That certified letter and receipt is attached hereto as Exhibit "U." The Defendants refused to accept delivery of the certified mail.

23. On January 27, 2016, the International Justice Chief wrote to inform the Plaintiffs that Jasmin Buchele was unavailable to be an arbitrator because of her schedule and rejected the remaining list of arbitrators chosen by the Plaintiffs. Attached hereto as Exhibit "V" is correspondence from the International Chief Justice to Mr. and Mrs. Garcia. As an example, Susan Crane who was, according to the International Justice

Chief, unqualified because she had publicly resigned and supposedly was represented by the undersigned attorney and pointed out that three of the names were unqualified and one was deceased. The Justice Chief confirmed that this was the fifth attempt by the Plaintiffs to choose an arbitrator and incorrectly stated that Plaintiffs had submitted 40 names. In fact, as is confirmed in the affidavit of Mr. Garcia (Exhibit "E"), Plaintiffs have submitted 45 names of potential arbitrators. All of them have been rejected as "not in good standing" or unavailable. As confirmed by Mr. Garcia's Affidavit, 43 of the 45 names submitted were picked from a current website run by the Church of Scientology suggesting that people get in touch with current Scientologists. The headline of this website states "meet over 16,000 Scientologists on-line." Attached hereto as Exhibit "W" are screen shots of these 43 people, each of which has a personalized page on the website. This website is owned and run by the Defendants. There is nothing on the website to indicate these individuals are not in good standing. To the contrary, under any reasonable definition of "good standing," any reasonable person would presume someone listed on a website run by the Church containing a personal page telling people to contact these persons to receive information about Scientology and having an internal website for each of these individuals talking about Scientology would be someone in good standing. The Garcia's have proceeded in good faith to try and name an arbitrator and have been stymied at every turn by the Scientology International Justice Chief.

24. The heart of the problem is that there are simply no rules governing this arbitration process. While the Court found that the limited process set forth in the arbitration agreement was sufficient, in practical application that is not the case because the Defendants have taken the unreasonable position of insisting on a definition of "in

good standing" that makes it impossible for Plaintiffs to choose an arbitrator of their own

choice.   Scientology continues to act in a manner that indicates they believe they are

"above the law" and can deny anyone their right to due process with impunity.  It would

appear they hope the Garcias will become so frustrated they will just give up all hope of

ever getting their claims heard as they play games and constantly shift the goalposts.

25. Defendants, by their actions, have waived arbitration.

## MEMORANDUM OF LAW

### A.    Defendants waived the right to arbitrate.

Defendants waived the right to arbitrate by thwarting the Plaintiffs' ability to

select an arbitrator.   Defendants acted inconsistently with the right to arbitration by

repeatedly refusing to accept the multiple arbitrators the Plaintiffs proposed as not

members in "good standing."  Defendants frustrated the Plaintiffs' ability to choose an

arbitrator by refusing to provide the Plaintiffs with a list of Scientologists in "good

standing." The Plaintiffs resigned from the Church in 2010, six years ago, and have no

idea which members are in "good standing."  (Attached Exhibits "E" & "I").  Indeed,

Defendants took the position that the Plaintiffs are not permitted to talk to any

Scientologist other than the Justice Chief, making it impossible for Plaintiffs to select

their arbitrator (Attached Exhibit "D").

"[A]n agreement to arbitrate, just like any other contract . . . , **may be waived.**"

*Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002).   A party

waives the right to arbitrate by "acti[ng] inconsistently with the arbitration right" which

"in some way prejudiced the other party." *Garcia v. Wachovia Bank Corp.*, 699 F.3d

1273, 1277 (11th Cir. 22012) (quoting *Ivax*, 286 F.3d at 1315-16)). "[T]he doctrine of

waiver is not an empty shell." *Johnson v. Keybank Nat'l Ass'n* ("*In re Checking Account Overdraft Litig.*"), 754 F.3d 1290, 1294 (11th Cir. 2014).

This is analogous to *Boulds v. Dick Dean Economy Cars, Inc.*, 300 S.W.3d 614, 619-20 (E.D. Mo. 2010), where the defendant initially successfully compelled arbitration of the plaintiff's suit. When the plaintiff attempted to initiate arbitration, the defendant refused to abide by the procedural requirements in the arbitration agreement. The court reasoned that "a party who fails to follow the procedural steps required by the arbitration agreement **acts inconsistently with its right to arbitrate**." *Id.* at 619 (emphasis supplied). The Defendant's actions prejudiced the plaintiff by depriving her of any the "benefits" of the arbitration agreement, such as "the 'efficient and low-cost resolution of disputes.'" *Id.* at 620. This Court should find that Defendants waived their right to arbitration and vacate the order staying plaintiffs' claims pending arbitration.

Defendants failed to follow the procedure in the agreement for appointing arbitrators, which caused a lapse in this procedure. *See* 9 U.S.C. § 5 (providing this Court with the jurisdiction to resolve a dispute from a party's failure to follow the procedures set forth in the agreement for selecting an arbitrator or "if for any other reason there shall be a lapse in the naming of an arbitrator"); *see BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 492-95 (5th Cir. 2012). This statute attempts to ensure that the parties to an arbitration agreement receive "a panel that consists of arbitrators chosen by the parties in a manner that is neutral and fair to all parties concerned." *BP Exploration*, 689 F.3d at 495. In *BP Exploration*, a lapse in the appointment procedure occurred when "[t]he parties attempted to resolve the impasse for months, floating numerous ideas to no avail." *Id.* at 492. The arbitration would have

10

been indefinitely delayed unless the court intervened to resolve the lapse. *See id.* at 492-93.

As in *BP Exploration*, plaintiffs have worked diligently for months and proposed numerous arbitrators. Plaintiffs resigned from the Church six years ago. Defendants have prevented the Plaintiffs from speaking with any current members of the Church. Plaintiffs have no way to determine the identity of the pool of eligible arbitrators in "good standing," which is exclusively in the control of the Defendants. Due to Defendants' obstruction, Plaintiffs cannot proceed and select their arbitrator. Defendants failed to follow the minimal procedures set forth in the agreement for selecting an arbitrator, creating a lapse.

## CONCLUSION

Defendants waived their right to arbitrate by thwarting Plaintiffs' right to select an arbitrator as provided in the minimal procedures set forth in the arbitration agreement. By doing so, Defendants have effectively denied Plaintiffs redress to a fair and impartial tribunal by establishing an illusory "arbitration procedure" they never intended to function. This Court should lift the stay pending arbitration and order the litigation to proceed.

DATED:        This __13th__ day of __April__, 2016.

Respectfully submitted,

By _____

Theodore Babbitt
Fla. Bar No: 091146
Babbitt & Johnson, P.A.
1641 Worthington Road, Suite 100 (33409)
P. O. Box 4426

West Palm Beach, FL  33402-4426
T:  (561) 684-2500; F: 561-684-6308
tedbabbitt@babbitt-johnson.com

-and-

Ronald Weil
Fla. Bar No:  169966
Weil Quaranta, P.A.
Southwest Financial Center, Suite 900
200 South Biscayne Blvd.
Miami, FL  33131
T:  (305) 372-5352; F:  (305) 372-5355
rweil@wqmc.com

## CERTIFICATE OF SERVICE

We hereby certify that, on __4-13__, 2016, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filings.

By _____

Theodore Babbitt, Esq.
Florida Bar No: 091146
Babbitt & Johnson, P.A.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Phone: 561-684-2500
Fax: 561-684-6308
tedbabbitt@babbitt-johnson.com


F. Wallace Pope, Jr., Esq.
FBN 124449
Johnson Pope Bokor Ruppel
& Burns, LLP
911 Chestnut Street
Clearwater, FL 33757
Phone: (727) 461-1818
Fax: (727) 462-0365
E-mail: wallyp@ipfirm.com
Counsel for Flag Church & Ship
Church