UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS A. GARCIA SAZ, and wife, MARIA
DEL ROCIO BURGOS GARCIA,

    Plaintiffs,

vs.                                                      CASE NO. 8:13-CV-220-T-27TBM

CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
CHURCH OF SCIENTOLOGY FLAG
SHIP SERVICE, INC.

    Defendants.
_____/

## DEFENDANTS' MOTION FOR COURT TO PROVIDE FOR THE SELECTION OF A SCIENTOLOGIST IN GOOD STANDING AS ARBITRATOR

Defendants, by their undersigned counsel, pursuant to the provisions of Section 5 of the Federal Arbitration Act (9 U.S.C. §5), move the Court for the entry of an order providing for the selection of a Scientologist in good standing to serve as the first of the three arbitrators in this matter, in light of the Garcias' failure to select a qualified arbitrator. Defendants are submitting in camera in a sealed envelope a list of 500 Scientologists in good standing who are qualified to serve as arbitrators in this matter. Defendants have followed the Court's direction that they not contact or speak to such qualified individuals, and thus do not know which of these individuals are willing and able to serve as arbitrators, but defendants are confident that a significant number of the listed individuals are willing and able to serve.

On April 7, 2016, the Court held a status conference to attempt to resolve an apparent impasse in the plaintiff's selection of an arbitrator as required in the Enrollment Agreement

pursuant to which the Court previously ordered arbitration on March 13, 2015. The Court referred to Section 5 of the Federal Arbitration Act as providing authority for the Court to resolve such a failure of a party to choose a qualified arbitrator pursuant to an arbitration agreement. The Court properly noted that it could exercise such authority only upon an application of a party, and only consistently with the terms of an arbitration agreement. Defendants offered to submit such an application and, at the Court's request, to provide the names of 500 randomly selected Scientologists in good standing who, because of such status, are qualified to serve as arbitrators under the arbitration agreement. In the course of the status conference, the Court indicated that it wished to appoint all three arbitrators, to which Mr. Pope objected stating:

> MR. POPE: Well, actually, Mr. Garcia is supposed to pick one. We will have no problem picking one. And the two of them are to pick a third. So it's really only a matter of picking.
>
> THE COURT: Well, the problem though is you guys won't pick.
>
> MR. POPE: We will. We'll pick our own arbitrator.
>
> THE COURT: If you're going to invoke Section 5 of the FAA, your application is for the court to designate and appoint the arbitrator.

After short further colloquy, the Court stated:

> Now, if you have any objections to that – it's your motion, I mean your application that we're talking about filing. Somebody has got to file one.
>
> MR. POPE: Your Honor, we will file one and we will spell out what we think would be a way forward to get to where you want to go, which you've made perfectly clear. And we'll file it in short order.

On April 10, 2017, the Court issued an order implementing the defendants' offer to file an application under Section 5 of the FAA. The Court's order, however, contemplates that the defendants will move for the Court to appoint all three arbitrators. Defendants decline to do so, for the reasons that such an application is unnecessary to resolve the current impasse, would be

2

contrary to the contractual arbitration agreements and would change the ecclesiastical procedures established by the Church for the resolution of internal disputes arising, *inter alia*, from participation in the Scientology religion. Defendants apply for an order to resolve only the current impasse, that is, the Garcias' first selection of a Scientologist in good standing due to the failure of plaintiffs to exercise their right to make such selection.

As Mr. Pope stated at the status conference, there is no impasse with respect to the appointment of the second and third arbitrators, and defendants, by this application, do not seek to resolve an impasse that does not exist. According to the arbitration agreements (See attached Exhibit 1, ¶ 6.e.), the second arbitrator must be selected by the defendants within fifteen days after being notified of the selection of the first arbitrator. Defendants have chosen the person whom they will select, and will inform the IJC and the plaintiffs of that selection immediately upon selection of the first arbitrator, to meet the Court's expressed concern that a delay in such designation would further delay the arbitration.

The designation of the third arbitrator must await the selection of the arbitrator whom plaintiffs were entitled but failed to choose, subject only to the qualification that he or she be a Scientologist in good standing and able and willing to serve. If this motion is granted, that first arbitrator will be selected randomly by the Court from the list of 500 Scientologists in good standing that defendants have submitted to the Court under seal. The defendants then have fifteen days to designate their selected arbitrator; as stated, they will immediately identify their selection. Upon selection of that arbitrator, the two arbitrators must then select a third arbitrator within fifteen days. If they fail or are unable to do so, the arbitration agreement itself provides the remedy: the third arbitrator will be chosen by the International Justice Chief. If called upon to do so, he will act forthwith. Once the first arbitrator is selected by the Garcias (or the Court) the selection moves

expeditiously. Thus, the current impasse is effectively resolved by the Court's appointment of the first arbitrator. There is no need for the Court to intervene further in that process, and it would constitute an improper interference with the terms of the arbitration agreements and with the ecclesiastical governance of the Church for it to do so.

Defendants previously supplied plaintiffs with the names of 240 Scientologists in good standing as possible arbitrators. Contrary to plaintiffs' accusations, defendants did not discuss with any individuals the nature of the dispute or the identity of the individuals involved; they only inquired as to the willingness and availability of the persons on the lists. Plaintiffs categorically have refused to select any of the persons whose names were supplied, and have objected to the court's randomly choosing a Scientologist in good standing from the 500 names provided in camera with this motion.

The reason, remarkably enough was supplied by Mr. Garcia himself. The arbitration agreements between the parties require the Garcias' proposed arbitrator to be a "Scientologist in good standing." A "Scientologist in good standing" inevitably will be a committed Scientologist. But Mr. Garcia has stated under oath (Dkt. 220-1, Paragraph 2) that he would reject as a potential arbitrator anyone who is "totally committed to Scientology" because Garcia is "confident that none of these individuals would ever consider going against the Church and would be completely biased against any claim that someone like me who is 'declared' by the Church and would never be believed." Thus, the Garcias' position effectively is that they are unwilling to abide by the Court's Order of March 13, 2015, because they will not choose or accept as an arbitrator a Scientologist in good standing, contrary to their enrollment agreements and to the Order of this Court compelling arbitration pursuant to those agreements.

4

Indeed, the Facebook postings of "litigation consultant" Rinder and Rinder's employer, Aaron Smith-Levin, of which the Court is well aware, demonstrate that it is the intention of the Garcias and their "litigation consultant" to continue their attempts to game the system to avoid arbitration.

The Court not only should not permit Plaintiffs to succeed in their effort to abrogate or revise the arbitration process by refusing to select, but likewise it should not, as a consequence of the Plaintiffs' intransigence, rewrite the selection process established by the arbitration agreement in accordance with ecclesiastical determinations. If the Court denies the limited intervention requested by this application, it should instead dismiss plaintiffs' complaint with prejudice for failure to prosecute or to abide by the Court's Order of March 13, 2015. Defendants nevertheless wish and are prepared to go forward with the arbitration, as they have been for over two years. Pursuant to this motion, defendants now provide in camera a sealed list of 500 Scientologists in good standing in the Los Angeles area.[1] Recognizing that the Court has no knowledge of these individuals and cognizant of the principle that the Court avoid entanglement in the religious affairs of churches, defendants request that the Court order the random selection of an arbitrator from among the 500 Scientologists in good standing identified in that list. Defendants submit the following memorandum in support of this motion.

## MEMORANDUM

THE COURT HAS POWER, UPON APPLICATION OF DEFENDANTS, TO SELECT A QUALIFIED ARBITRATOR ON BEHALF OF PLAINTIFFS WHERE PLAINTIFFS HAVE FAILED TO EXERCISE THEIR RIGHT TO DO SO, SO LONG AS THE COURT DOES NOT OTHERWISE BECOME ENTANGLED IN MATTERS OF ECCLESIASTICAL INTERNAL ORGANIZATION, RULE, CUSTOM, OR LAW

---

[1] For reasons explained below, defendants at this time prefer not to provide the telephone numbers of all 500 persons. Should it become necessary, defendants will provide such information with respect to the person randomly chosen. Defendants also request that upon the conclusion of these proceedings, the Court order the destruction of the list provided.

5

The Federal Arbitration Act on its face empowers this Court to grant the relief requested in this motion:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators ..., such method shall be followed; but ... if a method be provided and any party thereto shall fail to avail himself of such method, ... then upon the application of either party to the controversy the court shall designate and appoint an arbitrator ... who shall act under the said agreement with the same force and effect as if he ... had been specifically named therein; ...
> (9 USC §5.)

In construing Section 5 of the Federal Arbitration Act, federal courts have held that the section means what it says. *BP Exploration Libya, Ltd. V. Exxon Mobile Ltd.*, 689 F.3d 481 (5th Cir. 2012) ("[W]e hold there was a lapse in the naming of arbitrators under the parties' arbitration agreement; thus the District Court properly exercised its jurisdiction under 9 U.S.C. §5 to intervene in the arbitrator appointment process." *Id.* at 496) *BP Exploration* also holds that:

> In exercising its appointment authority under §5, the district court must respect the intentions of the parties, as demonstrated in their arbitration agreement, while at the same time pay heed to the principle that each party should be treated fairly, if not equally, in the appointment process. *Id.* at 495.

*Cf. Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217 (11th Cir. 2000).

The *BP Exploration* case emphasized, however, that Section 5 authorizes only "very circumscribed judicial involvement in the arbitral process." 689 F.3d at 494. The court made clear that a court must act cautiously in exercising its Section 5 power and may not deviate from the terms of an agreement to arbitrate except as necessary to appoint an arbitrator where there has been a failure or impasse in doing so. Thus, the Fifth Circuit, while recognizing the district court's power to appoint an arbitrator, nevertheless reversed the specific way in which the district court did so in that case because it failed to abide by the terms of the arbitration agreement. See also *Universal Reinsurance Corp. v. Allstate Insurance Co.*, 16 F.3d, 125, 129 (7th Cir. 1994) (strictly

enforcing a term of an arbitration agreement for the appointment of arbitrators, stating, "the Arbitration Act states in no uncertain terms that contractual provisions for the appointment of an arbitrator '*shall* be followed.' 9 U.S.C. § 5" (court emphasis).

That caution applies doubly in this case. There is here only a failure by plaintiffs to appoint a single arbitrator. That is all the Court can or should remedy under Section 5. There is no further impasse or failure to act with respect to any other term of the arbitration agreement, let alone with the failure to appoint an arbitrator. It would be beyond the Court's Section 5 power to assume for itself the selection of the entire arbitration panel in the absence of an impasse and in the absence of an application that it do so. Moreover, were it to do so in the context of an arbitration agreement in a religious context, in which the agreement itself embodies church policy for the resolution of disputes, the court would be entangling itself intimately in "matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law" in violation of the First Amendment. *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 713 (1976).

The same caution must apply to the method by which a chosen arbitrator is notified. The Court order appears to contemplate that it will contact the individuals it randomly selects to determine their availability and to give them direction about the arbitration. The Court thus would be injecting its power and authority into the arbitration proceedings by altering the religious procedures set forth in the arbitration agreements, contrary to "the principle that civil authorities must abstain from interposing themselves in matters of church organization and governance." *Church of Scientology Flag Service Organization v. City of Clearwater,* 2 F.3d 1514, 1537 (11th Cir. 1993). It is the function and duty of the IJC to contact persons selected as arbitrators, after a party to arbitration informs the IJC of its choice. Here, the Court should act in the same manner

as the plaintiffs would if they selected, *i.e.*, the Court should notify the IJC who would then contact the person selected.

Any other procedure would inevitably lead to chaos. A Scientologist in good standing is unlikely to agree to participate in an arbitration proceeding without assurances from the IJC that the proceeding is authorized under Church law. If the Court were to contact a person it has selected, that person undoubtedly immediately would contact a local Church official or the IJC for information and advice, and quite possibly a lawyer. A local official may not know anything about the matter, and would make inquiries to other officials, including in the international Church. Information, and mis-information, about the arbitration would inevitably spread.

The same is true about the Court's expressed intention to schedule the arbitration. That, once again, is a matter for the arbitral panel and the IJC, not the Court. Nothing in the FAA authorizes such intervention, and, once again, the Court would be involving itself in a religious arbitration. Certainly, if the arbitral panel refuses or fails to conduct an arbitration, the Court may remedy it by finding waiver or default. But there is no suggestion or threat of such conduct here; to the contrary, once the members of the arbitral panel are in place, the arbitration will proceed with dispatch. The Court should not be in the position of imposing such unnecessary prophylactic control.

By restricting its exercise of power under Section 5 of the FAA to the selection of the single arbitrator for whom there has been a failure to act, the Court would remain within the limitations of the Act, the arbitration agreements, and the First Amendment. Once the selection of an available qualified arbitrator is made, the arbitration may proceed without judicial interference in the same manner as it would if plaintiffs had acted themselves in choosing an arbitrator.

Accordingly, the Court should exercise its power under Section 5 of the FAA to require the random selection of an arbitrator from the list of 500 Scientologists in good standing that defendants are submitting in camera. By invoking a random selection process, the Court would limit its involvement in the selection process to merely creating a mechanism to permit the process to go forward in the light of the plaintiffs' persistent refusal or failure to select a qualified arbitrator, while avoiding entanglement in religious governance or procedures.

## CONCLUSION

Defendants respectfully request that the Court exercise its authority under Section 5 of the Federal Arbitration Act to direct the appointment of a single qualified arbitrator.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 25, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: THEODORE BABBITT, ESQUIRE, tedbabbitt@babbitt-johnson.com, and other counsel of record.

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

Of Counsel:

Eric M. Lieberman
Rabinowitz, Boudin, Standard,
   Krinsky & Lieberman, P.C.
61 Broadway, 18th floor
New York, NY 10006
elieberman@rbskl.com

/s/ Robert V. Potter
F. Wallace Pope, Jr.
Florida Bar No. 124449
wallyp@jpfirm.com

Robert V. Potter
Florida Bar No 363006
bobp@jpfirm.com
Post Office Box 1368
Clearwater, Florida 33757
(727) 461-1818; (727) 462-0365-fax
*Attorneys for Flag Church & Ship Church*

4000565



# Church of Scientology
# Flag Service Organization

*(hereinafter referred to as "the Church")*

# Religious Services Enrollment Application, Agreement and General Release

1. I, **LOIS GARCIA**, recognize, acknowledge and agree that I am exclusively responsible for my present and future condition in life and for the choices and decisions I make affecting my life. With that in mind, and solely of my own volition and in the independent exercise of my own free will, I am voluntarily signing and submitting to **CHURCH OF SCIENTOLOGY** **FSO** (hereinafter "**the Church**") this **RELIGIOUS SERVICES ENROLLMENT APPLICATION, AGREEMENT AND GENERAL RELEASE** (hereinafter "**this Contract**") so that, upon its acceptance by the Church, I may participate in Religious Services of the Scientology religion under the terms, conditions, covenants, waivers and releases I agree to by signing this Contract.

2. This Contract is my statement of my personal, self-determined desire to participate in the Religious Services of the Scientology religion. By signing this Contract, I recognize, acknowledge and agree that:

    **a.** Scientology is a religion, the Church is a church of the Scientology religion, and all the services and activities of the Scientology religion are exclusively religious in nature.

    **b.** The Scientology religion is devoted to the study and handling of the human spirit in relationship to itself, universes and other life. The word "Scientology" comes from the Latin "scio," meaning "knowing in the fullest sense of the word," and the Greek "logos," meaning "study of." Dianetics spiritual healing technology is part of the Scientology religion and is the study of what the soul is doing to the body. The word "Dianetics" is from the Greek "dia," meaning "through," and "nous," meaning "soul," and thus means "through soul."

    **c.** The Founder of the Scientology religion is American author and philosopher L. Ron Hubbard (hereinafter "**LRH**"), whose writings and recorded spoken words on the subjects of Scientology and Dianetics are a record of his observations and research into the nature of the human spirit and condition. The writings and recorded spoken words of LRH on the subjects of Scientology and Dianetics present a guide intended to assist persons to become more aware of themselves as persons, restoring trust and respect for self and others. They are not a statement of claims by the Church, by any other Scientology church or organization, or by LRH.

    **d.** The term "Religious Services," as used in this Contract, means and refers to the beliefs and practices set forth in the writings and spoken words of LRH on the subjects of Dianetics and Scientology published with the identifying S and double triangle or Dianetics triangle symbol, and all services or application of the principles of Mr. Hubbard provided to me by the ministers or staff of the Church and all other Scientology churches and organizations, including without limitation: "auditing," which is Scientology's unique form of religious counseling encompassing all services on the Scientology Classification, Gradation and Awareness Charts which includes, without limitation, all levels, rundowns, grades, assists, reviews, repairs, seminars, co-audits; all Scientology congregational services of any description; "training," which is the study of the scripture of the Scientology religion on the road to achieving spiritual freedom and salvation and includes without limitation all services identified on the Scientology Classification, Gradation and Awareness Chart, all courses, internships and cramming; the application of Scientology Ethics and Justice technology, which are both exclusively religious components of the practice of the Scientology religion; the study and the application of the principles contained in the administrative writings of LRH used within the Church; and any and all other services or use of the technology of L. Ron Hubbard, without limitation, provided to me by the

ministers or staff of the Church and all other Scientology churches and organizations.

   e.   Neither the Church nor any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion makes any claim:

      I.   that the nature or purpose of Scientology, or of Dianetics, or of the writings and recorded spoken words of LRH, is contrary to what is stated in this Contract;

      II.  that the application of any Scientology or Dianetics technology or practice will have any particular effect on me or any other person; or

      III. that any particular result may be forthcoming from my participation in any Scientology Religious Service. I specifically acknowledge that I have read and that I understand Scientology Policy Directive 13 March 1996, Statements by Staff Members, which states clearly that if any individual staff member of any Scientology church or organization makes any claims about the results which may be forthcoming from my participation in any Scientology Religious Service, any such claims are the personal opinions and beliefs of that staff member only, and are not claims made by the Church or any other Scientology church or organization.

3. I have seen the film "Orientation" and I am now informed and aware and fully understand that Scientology is a religion, that its teachings are religious and that its claims are religious in nature. I am further informed and aware and fully understand that when I participate in Scientology services, I am participating in religious services under the ecclesiastical principles of the Scientology religion. I am also informed and aware and fully understand that the Church and all other Scientology churches are separate, distinct legal corporations each independently operating and responsible for its own corporate and ecclesiastical affairs.

4. This Contract is my commitment that I desire to participate in Scientology Religious Services exclusively for spiritual purposes in accordance with the beliefs and practices of the Scientology religion. Scientology Religious Services are designed to give spiritual aid, not medical treatment. However, the Scientology religion teaches that the spirit can be saved and that the spirit alone may save or heal the body, and Scientology Religious Services are intended to save the spirit. By signing this Contract, I recognize, acknowledge and agree that:

   a.   Scientology Religious Services are not intended and are not used for diagnosing ailments of the body or for engaging in the teaching or practice of any medical arts or sciences.

   b.   It is exclusively my responsibility to see to my physical and medical well-being, and under no circumstance does the Church or any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion have any responsibility whatsoever in that regard.

   c.   I have not come to the Church, nor do I seek to participate in Scientology Religious Services, solely to be cured of any physical illness, ailment or condition.

   d.   While the registrar can assist me in arranging for a competent medical examination and appropriate treatment by a qualified medical practitioner before I participate in any Scientology Religious Services, it is solely my responsibility to take whatever steps are necessary to demonstrate that I have no diagnosable or medically treatable illnesses, ailments, or conditions that are not under competent medical care before I begin participating in any Scientology Religious Service. Thereafter, any physical illness, ailment or condition I may have that has been treated medically may then be addressed spiritually by the application of the tenets of the Scientology religion, subject to the terms of this Contract.

   e.   I know that I should not participate in any Scientology Religious Service if I have a physical or mental condition which might be aggravated or which might make my participation in the service uncomfortable or distressful to me, and I agree to accept and assume any and all known or unknown risks of injury, loss, or damage resulting from my choices and decisions in that regard.

   f.   Scientology Religious Service may entail the use of a religious artifact known as the "E-Meter" for the purpose of locating and resolving problems and difficulties which are spiritual in nature. I understand that, by itself, the E-Meter does nothing, but serves only as a guide to Scientology ministers to assist parishioners in locating areas of spiritual distress or travail, and that it is not intended or effective for the diagnosis, treatment or prevention of any disease, or for the improvement of health or any bodily function.

   g.   Scientology is unalterably opposed, as a matter of religious belief, to the practice of psychiatry, and espouses as a religious belief that the study of the mind and the healing of mentally caused ills should not be alienated from religion or condoned in nonreligious fields. I am in full agreement with this religious belief. I do not believe in or subscribe to psychiatric labels for individuals. It is my strongly held religious belief that all mental problems are spiritual in nature and that there is no such thing as a mentally incompetent person—only those

suffering from spiritual upset of one kind or another dramatized by an individual. I reject all psychiatric labels and intend for this Contract to clearly memorialize my desire to be helped exclusively through religious, spiritual means and not through any form of psychiatric treatment, specifically including involuntary commitment based on so-called lack of competence. Under no circumstances, at any time, do I wish to be denied my right to care from members of my religion to the exclusion of psychiatric care or psychiatric directed care, regardless of what any psychiatrist, medical person, designated member of the state or family member may assert supposedly on my behalf. If circumstances should ever arise in which government, medical, or psychiatric officials or personnel or family members or friends attempt to compel or coerce or commit me for psychiatric evaluation, treatment or hospitalization, I fully desire and fully expect that the Church or Scientologists will intercede on my behalf to oppose such efforts and/or extricate me from that predicament so my spiritual needs may be addressed in accordance with the tenets of the Scientology religion free from psychiatric intervention.

5. This Contract memorializes my intention to participate in Scientology Religious Services only for purposes of self-improvement and spiritual advancement. By signing this Contract, I recognize, acknowledge and agree that:

   a. Achieving the benefits and goals of the Scientology religion requires my dedicated participation, because only through my own efforts can I achieve those benefits and goals.

   b. Before I go on to any further service, it is essential that I am completely satisfied with my experience with my prior service. While Scientology holds out the possibility of a better life through adherence to its beliefs and practices, individual spiritual advancement is not always an easy or comfortable task, and my success in Scientology ultimately depends on my own ability, strength and determination to overcome the shortcomings and harmful patterns of my past. By agreeing to proceed with further services, I acknowledge complete satisfaction with all services I have participated in previously.

   c. No Scientology church is under any duty or obligation whatsoever to return any portion of any religious donation I make. However, I have read Scientology Policy Directive 13 March 1996, Return of Donations, and understand that under certain circumstances identified in published ecclesiastical policies such as that Scientology Policy Directive, a return of donations may be obtained through my strict compliance with those published policies and procedures relating to the Claims Verification Board. I further understand, acknowledge and agree that:

      i. such procedures require my direct participation to the exclusion of any third parties, including, but not limited to, attorneys;

      ii. returns of donations are exclusively within the ecclesiastical authority and sole discretion of the Claims Verification Board;

      iii. any violation of, or deviation from, such published policies by me voids any possibility of my receiving a return of a donation; and

      iv. should I, at any time, ever request a refund or repayment of donations, such refund or repayment will be given if and only if I have followed the exact procedures of the Claims Verification Board and this Contract, and that in exchange for refund or repayment of such donations as determined by the Claims Verification Board, I execute a complete release, quitclaim and waiver of claims as provided by an authorized Church representative.

   d. In connection with my participation in Scientology Religious Services, the Church may compile a folder containing its notations of my spiritual progress, known as a "Preclear Folder" or "PC Folder," as well as other ecclesiastical files containing notations regarding my spiritual progress. All of my PC Folders and other ecclesiastical files containing notations regarding my spiritual progress, as well as all contents thereof, are the sole and exclusive property of Church of Scientology International. As a matter of religious belief and of ecclesiastical doctrine and law, such folders and files, and the contents of such folders and files, are kept confidential from all persons who lack the ecclesiastical authority to gain access to such materials, including me, are subject to all applicable clergyman-penitent privileges, and are neither comprehensible nor meant to be understood by anyone whose training and expertise in their interpretation is not recognized and sanctioned by Church of Scientology International.

      i. As a condition of being accepted for participation in Scientology Religious Services, I forever abandon, surrender, waive, and relinquish without limitation any and all rights of ownership, possession, custody, control, access, copying, and viewing of my PC Folder or Folders and all other ecclesiastical files containing any notations regarding my spiritual progress, both with respect to the folders and files themselves and the information contained in them.

      ii. The abandonment, surrender, waiver, and relinquishment to which I refer in the immediately preceding subparagraph is unconditional and irrevocable and applies equally to anyone acting or purporting to be acting on my behalf or for my benefit, whether I am alive or dead, whether I am disabled or incapacitated, and under any

and all circumstances foreseen or unforeseen, in perpetuity, without exception or limitation.

   **III.** Should I or anyone acting or purporting to be acting on my behalf or for my benefit ever seek access to any of my PC Folders or any other ecclesiastical file containing any notations regarding my spiritual progress, I intend for the submission of this Contract to the presiding judicial officer to be a complete and sufficient basis for the immediate denial of whatever access is being sought with prejudice to any other or further effort to breach the absolute confidentiality of those materials or the exclusive right of Church of Scientology International to preserve their absolute confidentiality.

   **e.** It is both an unalterable religious belief and a matter of ecclesiastical custom of the Scientology religion that my personal spiritual progress will be directed by a minister known as a Case Supervisor who determines which Religious Services are appropriate for my personal spiritual progress and the sequence in which I will participate in such Religious Services. As a matter of religious belief, I acknowledge that my Case Supervisor will make the decisions regarding the appropriate course of my spiritual progress, and I will abide by the decisions and direction of my Case Supervisor in guiding my spiritual progress. All Religious Services in which I participate hereafter at the direction of my Case Supervisor are subject to the terms of this Contract.

6. This Contract memorializes my freely given consent to be bound exclusively by the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion in all matters relating to Scientology Religious Services, in all my dealings of any nature with the Church, and in all my dealings of any nature with any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion. By signing this Contract, I recognize, acknowledge and agree that:

   **a.** My freely given consent to be bound exclusively by the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion in all matters relating to Scientology Religious Services, in all my dealings of any nature with the Church, and in all my dealings of any nature with any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion means that I am forever abandoning, surrendering, waiving, and relinquishing my right to sue, or otherwise seek legal recourse with respect to any dispute, claim or controversy against the Church, all other Scientology churches, all other organizations which espouse, present, propagate or practice the Scientology religion, and all persons employed by any such entity both in their personal and any official or representational capacities, regardless of the nature of the dispute, claim or controversy.

   **b.** The abandonment, surrender, waiver, and relinquishment to which I refer in the immediately preceding subparagraph is unconditional and irrevocable and applies equally to anyone acting or purporting to be acting on my behalf or for my benefit, whether I am alive or dead, whether I am disabled or incapacitated, and under any and all circumstances foreseen or unforeseen, in perpetuity, without exception or limitation.

   **c.** Should I or anyone acting or purporting to be acting on my behalf ever sue, or otherwise seek legal recourse with respect to any dispute, claim or controversy against the Church, any other Scientology church, any other organization which espouses, presents, propagates or practices the Scientology religion, or any person employed by any such entity, regardless of the nature of the dispute, claim or controversy, I intend for the submission of this Contract to the presiding judicial officer to be a complete and sufficient basis for the immediate dismissal of any and all such proceedings with prejudice to further proceedings of any kind.

   **d.** In accordance with the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion, and in accordance with the constitutional prohibitions which forbid governmental interference with religious services or dispute resolution procedures, should any dispute, claim or controversy arise between me and the Church, any other Scientology church, any other organization which espouses, presents, propagates or practices the Scientology religion, or any person employed by any such entity, which cannot be resolved informally by direct communication, I will pursue resolution of that dispute, claim or controversy solely and exclusively through Scientology's internal Ethics, Justice and binding religious arbitration procedures, which include application to senior ecclesiastical bodies, including, as necessary, final submission of the dispute to the International Justice Chief of the Mother Church of the Scientology religion, Church of Scientology International ("IJC") or his or her designee.

   **e.** Any dispute, claim or controversy which still remains unresolved after review by the IJC shall be submitted to binding religious arbitration in accordance with the arbitration procedures of Church of Scientology International, which provide that:

   **I.** I will submit a request for arbitration to the IJC and to the person or entity with whom I have the dispute, claim or controversy;

   **II.** in my request for arbitration, I will designate one arbitrator to hear and resolve the matter;

   **iii.** within fifteen (15) days after receiving my request for arbitration, the person or entity with whom I have the dispute, claim or controversy will designate an arbitrator to hear and resolve the matter. If the person or entity with whom I have the dispute, claim or controversy does not designate an arbitrator within that fifteen (15) day period, then the IJC will designate the second arbitrator;

   **iv.** the two arbitrators so designated will select a third arbitrator within fifteen (15) days after the designation of the second arbitrator. If the arbitrators are unable to designate a third arbitrator within the fifteen (15) day period, then the IJC will choose the third arbitrator;

   **v.** consistent with my intention that the arbitration be conducted in accordance with Scientology principles, and consistent with the ecclesiastical nature of the procedures and the dispute, claim or controversy to which those procedures relate, it is my specific intention that all such arbitrators be Scientologists in good standing with the Mother Church.

  **f.** The Church and all other Scientology churches and organizations which espouse, present, propagate or practice the Scientology religion are each separate, distinct legal corporations, and each such entity is independently responsible for its own management and is independently responsible for its own corporate and ecclesiastical affairs.

**7.** This Contract is my good faith application to participate in Scientology Religious Services. By signing this Contract, I promise, covenant, and represent that:

  **a.** I am applying to participate in Scientology Religious Services to achieve spiritual betterment because I truly believe that persons can be helped to gain greater understanding and happiness in life.

  **b.** I am applying honestly and in good faith to derive all possible personal gain from Scientology Religious Services.

  **c.** I have no record of being committed in an institution for mental or emotional disorders.

  **d.** I have no criminal record that includes a felony offense.

  **e.** I am not connected with any person, such as by marital or familial ties, of known antagonism to spiritual treatment or to Scientology.

  **f.** Neither I nor any member of my immediate family has ever sued, embarrassed or attacked, or threatened to sue, embarrass or attack, Scientology.

  **g.** I am not attempting to investigate Scientology as a representative of any news media, government agency or entity, or any other organization, entity or person.

**8.** This Contract will become a legally binding agreement between me and the Church upon its acceptance by the Church or upon my commencing my participation in a Scientology Religious Service, whichever occurs first. In determining whether to accept this Contract, I acknowledge that the Church will rely on the acknowledgements, agreements, representations and promises which I have made herein.

**9.** As further consideration for the Church's permission for me to participate in Scientology Religious Services and for me to use its facilities and other facilities provided for such purposes:

  **a.** I, on behalf of myself and on behalf of my heirs, distributees, legal representatives and assigns, agree not to make claims against, sue, attach the property of, or prosecute the Church, the successors and assigns of L. Ron Hubbard, Church of Spiritual Technology, Religious Technology Center, the Church of Scientology International, any and all Scientology-affiliated churches, missions, corporations, associations, partnerships, trusts, religious orders or organizations, or, in any and all capacities and as individuals, their officers, directors, trustees, agents, servants, successors, heirs, executors or representatives, or the owners, managers, employees, agents or representatives or associates of, any facilities conducting Scientology Religious Services (hereinafter collectively **"the Releasees"**) for any physical, mental or emotional injury, property damage, or monetary loss resulting from negligence or other acts, howsoever caused, of any Releasee or of any employee, agent or contractor of the Church, its affiliates, or other Releasee, in any way relating to my participation in Scientology Religious Services.

  **b.** I further release and discharge the releasees in any and all capacities and as individuals from all actions, claims or demands I, my heirs, distributees, guardians, legal representatives or assigns now have or may hereafter have for any physical, mental or emotional injury, property damage, or monetary loss resulting in any way from my participation in Scientology Religious Services.

    c. I further agree to indemnify and save and hold harmless the Releasees in any and all capacities and as individuals, and each of them, from any loss, liability, damage or cost they may incur due to my participation in Scientology Religious Services or due to my presence or action in or about the Church premises or the facilities providing such services.    _LG_

    d. I understand, acknowledge and agree that should any provision or provisions of this Contract be, for any reason, unenforceable, the balance shall nonetheless be of full force and effect.    _LG_

    e. I further understand, acknowledge and agree that this Contract contains everything that the Church or Church representatives and I have addressed or discussed with respect to Scientology Religious Services, and that it constitutes the sole and entire agreement which contains everything that I have relied upon in applying to participate in Scientology Religious Services and supersedes any and all verbal discussions I have had with anyone.    _LG_

**I HAVE CAREFULLY READ THIS CONTRACT AND FULLY UNDERSTAND ITS CONTENTS AND CONSEQUENCES. I ALSO UNDERSTAND THAT I AM NOT ELIGIBLE FOR ANY SCIENTOLOGY RELIGIOUS SERVICES UNLESS I SIGN THIS CONTRACT. I REAFFIRM THAT I WISH TO PARTICIPATE IN SCIENTOLOGY RELIGIOUS SERVICES AND THAT THIS CHOICE IS AN INDEPENDENT EXERCISE OF MY OWN FREE WILL. I FULLY UNDERSTAND THAT BY SIGNING BELOW, I AM FOREVER GIVING UP MY RIGHT TO SUE THE CHURCH, ITS STAFF AND ANY OF THE HEREINABOVE REFERENCED RELEASEES FOR ANY INJURY OR DAMAGE SUFFERED IN ANY WAY CONNECTED WITH SCIENTOLOGY RELIGIOUS SERVICES .**

I sign this Religious Services Enrollment Application, Agreement and General Release on this _19_ day of _MARCH_, 20_09_ intending to be legally bound by it, and request that I be permitted to participate in Scientology Religious Services.

_Luis Garcia_
(SIGNATURE OF APPLICANT)

_LUIS GARCIA_
(Printed Full Name)

_████████████ IRVINE, CA 92603_
(Home Address)

_____
(SIGNATURE OF PARENT OR GUARDIAN, IF APPLICANT IS A MINOR)

_____
(Printed Full Name)

_____
(Home Address)

_____
(SIGNATURE OF WITNESS)

_____
(Printed Full Name)

Having reviewed the above Religious Services Enrollment Application, Agreement and General Release the Church, in reliance upon, and conditioned upon, the truthful promises, representations and agreements made therein, on this ___ day of _____, 20__ accepts _____ for participation in Scientology Religious Services.

CHURCH OF SCIENTOLOGY _____

By its: _____
                (Title)

(SIGNATURE) _____

© 2001 CSFSO. All Rights Reserved. Flag Service Organization Corporate Symbol, SCIENTOLOGY, DIANETICS and L-MUDA are trademarks and service marks owned by Religious Technology Center and are used with its permission. SCIENTOLOGISTS is a collective membership mark designating members of the affiliated churches and missions of Scientology. Services relating to Scientology religious philosophy are delivered throughout the world exclusively by licensees of the Church of Scientology International with the permission of Religious Technology Center, holder of the SCIENTOLOGY and DIANETICS trademarks. Printed in U.S.A.