UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIA DEL ROCIO BURGOS GARCIA,
and LUIS A. GARCIA SAZ,

        Plaintiffs,

vs.                                      Case No. 8:13-cv-220-T-27TBM

CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
CHURCH OF SCIENTOLOGY FLAG
SHIP SERVICE ORGANIZATION, INC.,

        Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendants' Motion for Court to Provide for the Selection of a Scientologist in Good Standing as Arbitrator (Dkt. 239), and Plaintiffs' response (Dkt. 241). Upon consideration, the Motion is GRANTED in part.

On April 7, 2017, a status conference was conducted on why the parties failed to select arbitrators more than two years after being ordered to arbitrate, and notwithstanding having been directed to diligently comply with the procedures for selecting arbitrators in accordance with their arbitration agreement. At the time, the parties agreed that they had reached an impasse in the selection of arbitrators and Defendants agreed to file an application under Section 5 of the Federal Arbitration Act for the appointment of arbitrators. (*See* Dkt. 235 at 6:8-12, 11:1-16). Defendants agreed that their application would be for the selection of all three arbitrators. (*Id.* at 12:16-20).

In its order entered after the hearing, the Court found that the parties had reached an impasse in the selection of arbitrators, considering the passage of time, the exchange between the lawyers at

1

the status conference, and the six status reports which reflected a stalemate over the selection of Scientologists in good standing to serve as arbitrators. (Dkt. 238).[1] Defendants were directed to file an application under Section 5 of the FAA for the appointment of three arbitrators in accordance with the arbitration agreement, and to provide to chambers under seal and in camera 500 Scientologists in good standing in the greater Los Angeles, California area, selected at random.[2] From that list, the Court would select three individuals to serve as arbitrators and a hearing would be conducted for the purpose of scheduling the arbitration. On April 25, 2017, although Defendants filed their application under Section 5, they contend that the Court only has authority to select Plaintiffs' arbitrator. Defendants "decline" to move for the Court to appoint all three arbitrators. This position is contrary to their previous position, as well as legally and factually incorrect.

Section 5 of the FAA provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, ***or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire***, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, ***as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.***

---

[1] *See* 9 U.S.C. § 5; *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 491–92 (5th Cir. 2012) ("We define 'lapse,' for purposes of 9 U.S.C. § 5, to mean a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process.") (quotation and citation omitted); *Stop & Shop Supermarket Co. LLC v. United Food & Commercial Workers Union Local 342, AFL-CIO, CLC*, 246 F. App'x 7, 10–11 (2d Cir. 2007) (affirming court's appointment of an arbitrator under § 5 because the parties' deadlock in naming arbitrators resulted in a lapse).

[2] Notwithstanding the express directive that Defendants were to provide each individual's address, occupation, and phone number, their submission did not include the phone numbers and occupations, and it was necessary to compel compliance with the order (Dkt. 242).

As previously determined, and agreed by the parties, there has been "a lapse in the naming of [the] arbitrator[s]" conferring the authority on the Court under the FAA to make the requested appointment. 9 U.S.C. § 5. In *BP Exploration Libya*, "lapse" was defined as "a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process." 689 F.3d at 491–92 (quoting *In re Salomon S'holders' Derivative Litig.*, 68 F.3d 554, 560 (2d Cir. 1995)) (internal quotation marks omitted). While the Fifth Circuit explained that the district court could not ignore the parties' written arbitration agreement by appointing five arbitrators when the agreement provided for a panel of three, the district court could have appointed all three arbitrators itself, with or without party consultation, and would still be adhering to the parties' agreement. *BP Expl. Libya Ltd.*, 689 F.3d at 495–96 ("Consequently, in exercising its appointment authority under § 5, the district court must respect the intentions of the parties, as demonstrated in their arbitration agreement, while at the same time, pay heed to the principle that each party should be treated fairly, if not equally, in the appointment process."). It follows that for the Court to appoint only Plaintiff's arbitrator, as Defendants urge, would be inherently unfair. Selection of all three arbitrators by the Court treats the parties equally.

As noted, the parties were directed to arbitrate more than two years ago. This significant lapse in time and their inability to agree on who is a "Scientologist in good standing" is effectively a breakdown in the arbitrator selection process that has resulted in an impasse.[3] (*See* Dkt. 238). And

---

[3] *See Odyssey Reinsurance Co. v. Certain Underwriters at Lloyd's London Syndicate 53*, 615 F. App'x 22, 23 (2d Cir. 2015) (Finding that a deadlock over whether certain candidates were qualified, which resulted in one party refusing to proceed to the next phase of the selection process, caused a lapse in the naming of an arbitrator that "long delayed the alternative dispute resolution process—the precise situation Section 5 was designed to address.")

notwithstanding that the parties agreed they are at an impasse, I also find that there has been a "mechanical breakdown" in the selection process.

The arbitration clause directs Plaintiffs to "submit a request for arbitration to the IJC and to the person or entity with whom I have the dispute, claim or controversy [and] . . .designate one arbitrator to hear and resolve the matter." (Dkt. 239, Arbitration Agreement, p. 13-14). On August 18, 2015, Plaintiffs requested arbitration. Within 15 days after receiving that request, Defendants were to designate an arbitrator. If they did not, the IJC was to designate the second arbitrator. The two designated arbitrators were to select a third within 15 days, failing which the IJC would choose the third arbitrator. All of the arbitrators are required to be "Scientologists in good standing with the Mother Church." None of this happened.

Accordingly, Defendants' Motion for Court to Provide for the Selection of a Scientologist in Good Standing as Arbitrator (Dkt. 239) is **GRANTED** in part, to the extent that the Court will select three arbitrators from the list submitted by Defendants. A hearing for the purpose of scheduling arbitration will thereafter be conducted.[4] The motion is otherwise DENIED.

**DONE AND ORDERED** this 18th day of May, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[4] Defendants' contention that the arbitration agreement requires the IJC to contact the arbitrators and schedule arbitration is incorrect. Nothing in the agreement expressly requires that procedure. And Defendants' concern that individuals selected by the Court to serve as arbitrators will inevitably contact a Church official can be alleviated by Defendants informing Church officials of this matter and the Court's directives.