UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIA DEL ROCIO BURGOS GARCIA,
and LUIS A. GARCIA SAZ,

    Plaintiffs,

vs.                                                    Case No. 8:13-cv-220-T-27TBM

CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
CHURCH OF SCIENTOLOGY FLAG
SHIP SERVICE ORGANIZATION, INC.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Plaintiffs' Motion for Miscellaneous Relief (Dkt. 257),

Defendants' response (Dkt. 260), and Plaintiffs' Motion for Determination that the Defendants Have

Waived Arbitration (Dkt. 264), to which a response is unnecessary. The motions are **DENIED**.

Ecclesiastical arbitration is scheduled for October 23, 2017 before a panel of three

Scientologists in good standing. Plaintiffs move that the arbitrators be required to certify under oath

that they have not communicated with or had any contact with any agent from the Church, that a

court reporter be permitted to attend the arbitration, and for a determination that the Rules of the

Committee on Evidence do not apply to the arbitration.[1] Plaintiffs also move for a determination that

_____

[1] Plaintiffs' argument that "[t]he Court has held in no uncertain terms that the Rules of the Committee on
Evidence do not apply to this arbitration" is mistaken. In the order compelling arbitration, the Court found that
Defendants failed to present evidence that the Committee on Evidence had been established as the rules and procedures
governing arbitration at that time. (Dkt. 189 at 12-13 ("Moreover, even a superficial comparison of the arbitration
agreements with the provisions in the Committee on Evidence supports Plaintiffs' contention that the Committee on
Evidence could not, absent an *ad hoc* determination, provide the rules and procedures of arbitration.")). This

1

Defendants have waived arbitration.[2]

As for their first request, Plaintiffs provide no authority for the requested certification. Nor do they demonstrate that the Court has jurisdiction to order the arbitrators to comply with the requested certification.[3] As for their requests that a court reporter be permitted to attend the arbitration and for a ruling that the Rules of the Committee on Evidence do not apply, Plaintiffs provide no authority authorizing judicial involvement in determining the arbitration procedures.

By joining Scientology, Plaintiffs consented to its governing structures, policies, and doctrines and bound themselves to submit to its rules. Specifically, they agreed to arbitrate their dispute "in accordance with the arbitration procedures of Church of Scientology International." (Dkt. 189 at 16). The Church has maintained throughout these proceedings that IJC Mike Ellis is the official charged with deciding these internal matters, including the arbitration procedures. (See Ellis

---

determination was made as part of the analysis of whether sufficient rules and procedures for conducting arbitration existed for purposes of determining whether the arbitration agreement was procedurally unconscionable. (See Dkt. 189 at 11). As discussed herein, it is within the authority the Church to determine the procedures for ecclesiastical arbitration.

[2] "An agreement to arbitrate . . . may be waived." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002). This Circuit has established a two-part test to determine whether a party has waived its right to arbitrate. *Id.* First, it must be determined whether "under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Id.* (quotations and citations omitted). Second, courts "look to see whether, by doing so, that party has in some way prejudiced the other party." *Id.* (quotation and citation omitted). "[B]ecause of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012).

[3] The requirements that counsel and the parties certify "that they have had no contact, or any other sort of influence, from the date of the April 7, 2017 hearing forwards, with any of the potential or selected arbitrators," along with the admonition in the letters to the selected arbitrators not to discuss this matter with others or allow it to be discussed in their presence until such time as the arbitration begins, and the request that they report any attempt to discuss the dispute with them before the arbitration begins, are sufficient to preserve the integrity of the arbitration.

2

Dep., Dkt. 188-4 at 49:8-50:6).[4] While the rules governing Scientology arbitration may not be entirely clear on the record, the Church has advised Plaintiffs, though e-mails between counsel, that "[t]he conduct of the religious arbitration will be decided by the IJC at the appropriate time during the arbitration" (Dkt. 264-4), that arbitration will be conducted in accordance with Church ecclesiastical justice procedures," and that "[t]he arbitrators will be instructed by the [IJC] on the application of Scientology principles to arbitrate this dispute in a neutral and fair manner" (Dkt. 264-2).

While Plaintiffs may disagree with the IJC's determination of how arbitration will be conducted, the Free Exercise Clause prohibits this Court from resolving internal disputes concerning the interpretation or application of religious doctrine. *See, e.g., Watson v. Jones,* 80 U.S. (13 Wall.) 679, 727, 20 L.Ed. 666 (1872) (whenever questions of "ecclesiastical rule, custom or law have been decided by the highest ... church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them"). As the Supreme Court has instructed, "[c]onstitutional concepts of due process, involving secular notions of 'fundamental fairness' or impermissible objectives, are . . . hardly relevant to such matters of ecclesiastical cognizance." *Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich,* 426 U.S. 696, 715, 96 S. Ct. 2372, 2383, 49 L. Ed. 2d 151 (1976).

---

[4] For example, Ellis has testified that an attorney may be present, but may not "represent" the plaintiffs (Ellis Dep. at 15:24-16:9), that the plaintiffs would be "interviewed" by the arbitrators, that they would be able to "originate whatever [they] wanted to" in order to present their side of the story, and would be able to speak to the arbitrators (*id.* at 47:7-22).

Finally, Plaintiffs' argument that Defendants have waived arbitration by their actions is not supported by the evidence.[5] And to the extent Plaintiffs suggest that Defendants have violated a direct order of the Court, they provide no more than speculation in support of that suggestion.

**DONE AND ORDERED** this _16th_ day of October, 2017.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to: Counsel of Record

---

[5] To the extent they rely on the absence of arbitration procedures, that argument is rejected for the reasons discussed. As for their concern that counsel will not be permitted to attend, the IJC testified that their attorney may be present. And Plaintiffs' concerns that they do not know who has been appointed as arbitrators and therefore cannot determine the arbitrators' impartiality is irrelevant to whether Defendants have acted inconsistently with the right to arbitrate. Moreover, counsel for both parties will have been made aware of the identity of the arbitrators and the location of the arbitration by now, and not later than October 23, 2017.