UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIA DEL ROCIO BURGOS GARCIA,
and LUIS A. GARCIA SAZ,

    Plaintiffs,

vs.                                               Case No. 8:13-cv-220-T-27TBM

CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
CHURCH OF SCIENTOLOGY FLAG
SHIP SERVICE ORGANIZATION, INC.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Plaintiffs' Amended Motion to Vacate Arbitration Awards (Dkt. 272) and Defendants' response (Dkt. 275). Upon consideration, Plaintiffs' Motion is DENIED.

Ecclesiastical arbitration of the Garcias' claims for fraud, breach of contract, and violations of the Deceptive and Unfair Trade Practices Act took place on October 23 and 24, 2017 before a panel of three Scientologists in good standing.[1] On the first day, the International Justice Chief ("IJC") provided the arbitrators with written instructions (Dkt. 275-3), Scientology policies on justice procedures, a copy of the Garcias' statement of claims and complaint (Dkt. 275-2), the letter from the Claims Verification Board ("CVB") denying the Garcias' claims for refunds of payments for services and a return of donations (Dkt. 275-2), and copies of the enrollment agreements signed by

---

[1] Specifically, the Garcias claimed that the Church solicited contributions from them for purposes that were never fulfilled and failed to repay deposits for services that were never provided and for accommodations that were never used. (*See* Amended Complaint, Dkt. 114).

1

the Garcias. (Declaration of Mike Ellis, Dkt. 275-1 at ¶¶ 6-8).

The instructions listed the Garcias' claims as follows:

I. Returns of advance donations (repayment) for services and payments for accommodations, as follows:

   A. $37,413.56 from the Church of Scientology Flag Service Org (FSO) for services and religious retreat accommodations the Garcias did not avail themselves of.

   B. $31,445.45 from the Church of Scientology Flag Ship Service Org (FSSO) for services and religious retreat accommodations the Garcias did not avail themselves of.

   C. $10,000 from the Church of Scientology of Orange County (Orange County Org) for donations for services the Garcias did not avail themselves of.

II. $40,410 from the International Association of Scientologists (IAS) and US IAS Members Trust (USIMT) for membership donations.

III. $340,000 from the Church of Scientology Religious Trust (CSRT) for donations to the Super Power project (Flag building).

IV. $510,000 from Orange County Org for donations to the Ideal Org fund.

The arbitrators were instructed that the arbitration was "to be conducted in strict accordance with Scientology ethics and justice policies," and were provided the relevant policies. (Dkt. 275-4 at 1). They were instructed "to determine whether the Garcias followed the refund procedures required by policy," that the key policy was the "RELIGIOUS SERVICES ENROLLMENT APPLICATION AGREEMENT AND GENERAL RELEASE (the Enrollment Form)," and to determine whether the Garcias' requests for refunds were valid, and if so, in what amount. (*Id.*) The IJC was to operate as a terminal for Suppressive Persons, like the Garcias, and resolve any questions of relevance of information submitted to the arbitrators. (*Id.* at 2). The arbitrators were instructed to

"conduct th[e] arbitration in a fair and neutral manner, notwithstanding the Garcias have been declared.") (*Id.*)

The Garcias proffered a number of documents to the IJC as evidence in support of their claims for consideration by the arbitrators. Consistent with Church policy, the IJC resolved the relevance of Plaintiffs' documents, and disallowed or redacted several of those documents. (Dkt. 275-1 at ¶9; Affidavit of Luis Garcia, Dkt. 272-3 at 9-10). On the second day, the arbitrators met with the Garcias, questioned them, and permitted them to address the panel and present, if they wished. (Dkt. 275-1 at ¶ 12; Dkt. 272-3 at 11-16).

The IJC provided the arbitrators with two forms to complete, a "Religious Arbitration Findings Form" on which to answer "yes" or "no" to specific questions about the Garcias' claims, and a "Religious Arbitration Decision Form" on which to answer "yes" or "no" to the questions of whether they were entitled to repayments and refunds of donations and advance payments, and if so, the amount. (Dkt. 275-1 at ¶ 14; Dkts. 275-6, 275-7).

The arbitrators awarded the Garcias $18,495.36 for repayments for accommodations at religious retreats they did not avail themselves of. (Dkt. 275-7 at 2). The IJC accepted the decision, which was mailed to the Garcias with two checks, on October 26, 2017.[2]

The Garcias move to vacate the arbitration award pursuant to 9 U.S.C. § 10(a)(2) & (3), contending that the arbitration panel acted with evident partiality and engaged in misconduct. Specifically, they contend that the arbitrators exhibited partiality because they met with the IJC outside their presence, were provided the CVB's letter, and made numerous statements demonstrating they had already decided the dispute in favor of the Church. They contend that the

---

[2] The checks were from Flag Ship Service Organization, Inc. and Flag Service Organization.

3

arbitrators engaged in misconduct by: (1) refusing to hear evidence or witnesses critical of the Church; (2) refusing to consider their fraud claims; (3) allowing the IJC to have ex parte conduct with the panel; (4) refusing to allow their counsel to attend the arbitration; and 5) failing to provide sufficient written findings for the Court to review.

## Discussion

"There is a presumption under the FAA that arbitration awards will be confirmed, and federal courts should defer to an arbitrator's decision whenever possible." *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1321 (11th Cir. 2010) (quotation omitted). Under 9 U.S.C. § 10, a district court may vacate an arbitration award only on four narrow grounds:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Judicial review of arbitration awards under the Federal Arbitration Act ("FAA") is extremely limited. *Booth v. Hume Publishing, Inc.*, 902 F.2d 925, 932 (11th Cir. 1990); *Bamberger Rosenheim, Ltd., (Israel) v. OA Dev., Inc., (United States)*, 862 F.3d 1284, 1286 (11th Cir. 2017) ("Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law.") (quotation omitted). And where, as here, a religious arbitration award

is challenged, judicial review is even more limited, as the Garcias acknowledge. (Dkt. 272 at p. 2).³

In the context of secular arbitration, "'[a]n arbitration award may be vacated due to the "evident partiality" of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists.'" *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1300 (11th Cir. 2015) (quoting *Univ. Commons–Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F.3d 1331, 1339 (11th Cir. 2002)). And while a claim of evident partiality may warrant an evidentiary hearing, *see Univ. Commons–Urbana, Ltd.*, 304 F.3d at 1341-42, evidentiary inquiry is unnecessary here because the Garcias agreed to arbitrate in accordance with Scientology arbitration procedures, including the selection of arbitrators in good standing with the Church, whose partiality was a given.

As has been noted, and bears repeating here, particularly considering the many arguments advanced by the Garcias challenging the manner in which the arbitration was conducted:

> By joining Scientology, Plaintiffs consented to its governing structures, policies, and doctrines and bound themselves to submit to its rules. Specifically, they agreed to arbitrate their dispute "in accordance with the arbitration procedures of Church of Scientology International." (Dkt. 189 at 16). The Church has maintained throughout these proceedings that IJC Mike Ellis is the official charged with deciding these internal matters, including the arbitration procedures. (citation and note omitted). While the rules governing Scientology arbitration may not be entirely clear on the record, the Church has advised Plaintiffs, though e-mails between counsel, that "[t]he conduct of the religious arbitration will be decided by the IJC at the appropriate time during the arbitration" (Dkt. 264-4), that arbitration will be conducted in accordance with Church ecclesiastical justice procedures," and that "[t]he arbitrators will be instructed by the [IJC] on the application of Scientology principles to arbitrate this dispute in a neutral and fair manner" (Dkt. 264-2).

---

³ As one district court has noted, "the standard for vacating an arbitrator's decision is a narrow standard to begin with. The addition of the religious context further narrows the standard to make our intervention nearly impossible. As has been clear since secular courts were first faced with intrachurch property disputes, courts have jurisdiction over these cases, but are prohibited from interpreting the underlying religious dogma." *Lang v. Levi*, 198 Md. App. 154, 169, 16 A.3d 980, 989 (2011).

(Dkt. 265).

In their enrollment agreements, the Garcias expressly agreed to arbitrate in accordance with Scientology principles and procedures, and that the arbitrators selected would be in good standing with the Church. To the extent, therefore, they challenge the partiality of the arbitrators because of their standing with the Church, they agreed to inherent partiality in their agreements. "Where an agreement entitles the parties to select interested arbitrators, 'evident partiality' cannot serve as a basis for vacating an award under § 10(a)(2) absent a showing of prejudice." *Winfrey v. Simmons Foods, Inc.*, 495 F.3d 549, 551 (8th Cir. 2007). It therefore follows that comments by the arbitrators demonstrating their commitment to the Church and agreement with its policies, which the Garcias interpret as prejudice, cannot serve as a basis for vacating the award.[4]

Plaintiffs' argument that the award should be vacated because of misconduct is likewise unpersuasive. With respect to the IJC's disallowance and redaction of the exhibits the Garcias wanted to present, Scientology justice procedures specify that the IJC would determine how the arbitration was to be conducted and that he would instruct the arbitrators. Under his authority to determine the arbitration procedures, the IJC considered the documentary evidence submitted by Plaintiffs, recorded a description of each exhibit with an exhibit number, and determined whether the exhibit would be allowed or disallowed, and the grounds for disallowance (irrelevance, hearsay,

---

[4] Plaintiffs contend that the CVB letter, which denied their claims for refunds of payments for services and a return of donations, was "tantamount to a directed verdict." According to Defendants, this report was their response to Plaintiffs' claims submitted to the arbitrators. While the letter explains Church policy, applies it to Plaintiffs' claims, and states the Church's position that Plaintiffs should be awarded nothing, the arbitrators were instructed to make independent findings and decisions as to Plaintiffs' claims. The arbitration award of more than $18,000 demonstrates that the arbitrators made an independent finding.

Entheta,[5] or Other) on the "Religious Arbitration Exhibit Form." (Dkt. 275-5). And once arbitration commenced, any ex parte contact between the IJC and the arbitrators (the "hatting") was consistent with Church policy that the IJC would instruct the arbitrators, and therefore does not provide a basis for vacating the award. And the Garcias' contention that their attorney was not permitted to attend is disingenuous. They had been advised by the Church, and the Court, that their attorney could be present at the arbitration, but could not "represent" them. (*See* Dkt. 265 at 3 n.4 (citing Ellis Dep. at 15:24-16:9)).[6] There is no evidence that their attorney attempted to attend but was turned away.

Finally, the "Religious Arbitration Findings Form" and "Religious Arbitration Decision Form" belie the Garcias' contention that the arbitrators refused to consider their fraud claims and failed to provide sufficient written findings. Both forms include their claims for $340,000 from the Church of Scientology Religious Trust (CSRT) for donations to the Super Power project (Flag Building) and $510,000 from Orange County Org for donations to the Ideal Org fund. (Dkt. 275-6). According to the Findings Form, the arbitrators found that the Garcias' claims that they were misled by Church fundraisers were not credible with respect to the Super Power project and the Ideal Org fund.[7] (*Id.* at ¶¶ 31, 36, 39). The arbitrators checked "no" on the Decision Form, indicating their decision that the Garcias were not entitled to refunds for these donations. That is a sufficient finding. *See O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 747 (11th Cir. 1988)

---

[5] Plaintiff assert that "entheta" is a Scientology term that means anything critical of the Church, and that the IJC excluded all their evidence under that rubric. According to Defendants, "[i]n the context of an arbitration, that definition is similar to the legal concepts of irrelevance, incompetence, immateriality, and likely to be misleading and unduly prejudicial." Only two exhibits were disallowed on this ground.

[6] Ellis testified that an attorney may be present, but may not "represent" the plaintiffs (Ellis Dep. at 15:24-16:9), that the plaintiffs would be "interviewed" by the arbitrators, that they would be able to "originate whatever [they] wanted to" in order to present their side of the story, and would be able to speak to the arbitrators (*id.* at 47:7-22).

[7] Plaintiffs' donations to the Super Power project and humanitarian initiatives through the Ideal Org fund constitute the basis of their fraud claims. (*See* Dkts. 1, 114, 275-2).

("[A]rbitrators are not required to explain their reasons for an award.").

## Conclusion

The Garcias' challenges to the arbitration award involve matters of religious doctrine, specifically Scientology principles and procedures, including the authority of the IJC. While they may disagree with how the arbitration was conducted, their arguments raise secular notions of due process. And the Free Exercise Clause prohibits this Court from resolving their disputes concerning the interpretation or application of Scientology doctrine. *See, e.g., Watson v. Jones,* 80 U.S. (13 Wall.) 679, 727, 20 L.Ed. 666 (1872) (whenever questions of "ecclesiastical rule, custom or law have been decided by the highest ... church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them"). Significantly, the Supreme Court has observed that "[c]onstitutional concepts of due process, involving secular notions of 'fundamental fairness' or impermissible objectives, are . . . hardly relevant to such matters of ecclesiastical cognizance." *Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich,* 426 U.S. 696, 715, 96 S. Ct. 2372, 2383, 49 L. Ed. 2d 151 (1976).

Within the narrow scope of review of an arbitration award under the FAA, further limited by the First Amendment, there is no basis to vacate the arbitration award. Accordingly, Plaintiffs' Amended Motion to Vacate Arbitration Awards (Dkt. 272) is **DENIED**. Plaintiffs' Motion Requesting Evidentiary Hearing on Amended Motion to Vacate Arbitration Awards (Dkt. 277) is likewise **DENIED**.

**DONE AND ORDERED** this 17th day of July, 2018.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

8